NO. COA13-594

NORTH CAROLINA COURT OF APPEALS

Filed: 19 August 2014

WAKE COUNTY,
    Plaintiff,

    v.                                    Wake County
                                          Master File No. 06 CVS 16256
HOTELS.COM, L.P., et al.,
    Defendants.

---

BUNCOMBE COUNTY,
    Plaintiff,

    v.                                    Buncombe County
                                          No. 07 CVS 585
HOTELS.COM, L.P., et al.,
    Defendants.

---

DARE COUNTY,
    Plaintiff,

    v.                                    Dare County
                                          No. 07 CVS 56
HOTELS.COM, L.P., et al.,
    Defendants.

---

MECKLENBURG COUNTY,
    Plaintiff,

    v.                                    Mecklenburg County
                                          No. 08 CVS 741
HOTELS.COM, L.P., et al.,
    Defendants.

Appeal by plaintiffs from Order and Opinion filed on 19 December 2012 by Judge Calvin E. Murphy in Special Superior Court for Complex Business Cases. Heard in the Court of Appeals 19 November 2013.

*Ward and Smith, P.A., by Gary J. Rickner and Joseph A. Schouten; and Law Office of Michael Y. Saunders, by Michael Y. Saunders, for plaintiff-appellants.*

*Williams Mullen, by Charles B. Neely, Jr., Christopher G. Browning, Jr., Nancy S. Rendleman, Robert W. Shaw; Kelly Hart & Hallman, LLP, by Brian S. Stagner, pro hac vice, and Marcus G. Mungioli, pro hac vice; Skadden, Arps, Slate, Meagher & Flom LLP, by Darrel J. Hieber, pro hac vice, and Randolph K. Herndon, pro hac vice, for defendant-appellees.*

BRYANT, Judge.

Where the trial court did not err in concluding that defendants are not subject to plaintiffs' occupancy tax and where the trial court did not err in concluding that defendants were not required to collect and remit an occupancy tax, we affirm the trial court's grant of summary judgment in favor of defendants. Where the trial court dismissed plaintiffs' claim seeking recovery for collected but not remitted taxes on the basis of a contractual obligation because of plaintiffs' failure to provide sufficient notice of the claim in their pleadings, we affirm the dismissal. Lastly, where the trial court granted

summary judgment in favor of defendants on plaintiffs' claims for an accounting, conversion, and seeking to impose a constructive trust, we affirm.

Defendants are approximately eleven online travel companies (OTC) that operate websites which allow consumers to select and pay for hotel rooms directly online using a credit card. Consumers can make reservations with airlines, car rental companies, and cruise lines in addition to hotels. Defendants negotiate and contract with hotels to obtain rooms at discount rates, these rooms are then sold to customers at a rate the hotel is obligated to honor. Consumers who take advantage of this offer never pay the hotel directly, only the OTC.

Plaintiffs are four counties—Wake, Dare, Buncombe, and Mecklenburg—who are required by North Carolina statutes and local ordinances to collect and remit an occupancy tax based on a percentage of the receipts derived from the rental of hotel rooms in their respective counties. Plaintiffs claim that defendants charge consumers a rate higher than the discount rate negotiated with the hotel yet only remit to plaintiffs a tax amount based on the reduced rate. Plaintiffs contend defendants are liable for substantial unremitted tax amounts.

*Procedural History*

We discuss the procedural history for the lawsuits initially brought by each county.

Wake County

In Wake County Superior Court on 2 November 2006, Wake County filed a verified complaint and action for declaratory judgment against defendants Hotels.com, LP; Hotwire, Inc.; Trip Network, Inc. (d/b/a Cheap Tickets.com); Expedia, Inc.; Internetwork Publishing Corp. (D/B/A Lodging.com); Lowestfare.com, Inc.; Maupin-Tour Holding, LLC[1]; Travelport, Inc. (f/k/a Cendant Travel Distribution Services Group, Inc.)[2]; Orbitz, LLC; Priceline.com, Inc.; Site59.com, LLC; Travelocity.com, LP; Travelweb LLC; and Travelnow.com, Inc.[3] Wake County asserted that the action was to collect occupancy taxes and penalties due Wake County from gross receipts defendants derived from the rental of rooms, lodging, and other

---

[1] On 6 November 2007, Wake County filed notice of voluntary dismissal without prejudice of its claims against defendant Maupin-Tour Holding, LLC.

[2] On 25 January 2008, Wake County filed notice of voluntary dismissal without prejudice of its claims against defendant Travelport, Inc. (f/k/a Cendant Travel Distribution Services Group, Inc.).

[3] On 11 December 2011, Wake County filed notice of voluntary dismissal without prejudice of its claims against Travelnow.com, Inc.

accommodations furnished by hotels, motels, and similar places located in Wake County. By county ordinance, Wake County imposed a six percent "room occupancy tax" on the gross proceeds derived from the rental of hotel rooms and other accommodations within the county.[4] Wake County sought a declaratory judgment and injunction declaring that defendants' actions subjected defendants to payment of the occupancy tax. Wake asserted the following: violation of the room occupancy tax ordinance; conversion; imposition of a constructive trust; a demand for accounting; unfair and deceptive trade practices; agency; and claim for statutory penalties pursuant to Wake County ordinances. Wake County alleged damages in excess of $1,000,000.00 annually.

Dare County

In Dare County Superior Court, on 26 January 2007, Dare County filed a verified complaint and action for Declaratory Judgment against the identical entities named in the Wake County

---

[4] "The County of Wake hereby imposes and levies a tax of six percent (6%) of the gross receipts derived by any person, firm, corporation, or association from the rental of any room, lodging or accommodation furnished by a hotel, motel, inn, tourist camp, or similar place within the County that is subject to the State sales tax imposed under Section 105-164.4(a)(3) of the North Carolina General Statutes." WAKE COUNTY, N.C., R-91-107 ' 1 (1991).

complaint.[5,6,7] Dare County, like Wake County, asserted that the action was to collect occupancy taxes and penalties due Dare County from gross receipts defendants derived from the rental of rooms, lodging, and other accommodations furnished by hotels, motels, and similar places located in Dare County. Dare County imposed a five percent "room occupancy tax" on the gross proceeds from the rental of hotel rooms and other accommodations within the county.[8] Like Wake County, Dare County sought a

---

[5] On 20 August 2007, Dare County filed notice of voluntary dismissal without prejudice of its claims against Maupin-Tour Holding, LLC.

[6] On 7 December 2007, Dare County filed notice of dismissal without prejudice of its claims against Travelnow.com, Inc.

[7] On 1 February 2008, Dare County filed notice of voluntary dismissal without prejudice of its claims against Travelport, Inc. (f/k/a Cendant travel Distribution Services Group, Inc.).

[8] "There is hereby levied in the County of Dare a room occupancy tax of three per cent [sic] (3%) on the gross receipts derived from the rental of any room, lodging, or similar accommodation subject to sales tax under G.S. 105-164.4(a)(3)." DARE COUNTY, N.C., Resolution 91-9-26 ' 1 (1992).

"There is hereby levied within Dare County a room occupancy and tourism development tax of one per cent [sic] (1%) of the gross receipts derived from the rental of any room, lodging, or similar accommodation subject to sales tax under G.S. 105-164.4(a)(3) . . . ." DARE COUNTY, N.C., Resolution 91-9-27 ' 1 (1992).

"Whereas, the General Assembly of North Carolina . . . has authorized the Dare County Board of Commissioners to levy a supplemental room occupancy tax of 1% of the gross receipts

declaratory judgment and injunction declaring that defendants' actions subjected defendants to payment of the occupancy tax. Dare asserted the following: violation of the room occupancy tax ordinance; conversion; imposition of a constructive trust; a demand for accounting; unfair and deceptive trade practices; agency; and claim for statutory penalties pursuant to enabling legislation for the Dare County ordinance enacted by the North Carolina General Assembly. Dare County alleged damages in excess of $1,000,000.00 annually.

Buncombe County

In Buncombe County Superior Court on 1 February 2007, Buncombe County filed a declaratory judgment action against Hotels.com[9]; Hotels.com, LP[10]; Hotels.com GP, LLC; Hotwire, Inc.;

---

derived from the rental of any room, lodging, or similar accommodations subject to sales tax under G.S. 105-164.4(a)(3) . . . . located in Dare County . . . the Dare County Board of Commissioners desires to levy the said 1% supplemental occupancy tax . . . ." DARE COUNTY, N.C., Resolution implementing supplemental occupancy tax (Dec. 3, 2001).

[9] On 4 April 2007 Buncombe County filed notice of dismissal without prejudice of its claims against Hotels.com; Orbitz.Inc.; Priceline.com, LLC; Site59.com, LLC; Travelocity.com, Inc.; Travelnow.com, Inc.; Cheap Tickets. Inc.; Sabre, Inc.; and Travelweb, Inc.

[10] On 10 December of 2007, Buncombe County filed notice of dismissal without prejudice its claims against Hotels.com GP, LLC.

Trip Network, Inc., d/b/a Cheaptickets.com; Travelport, Inc., (f/k/a Cendant Travel Distribution Services Group, Inc.)[11]; Expedia, Inc.; Internetwork Publishing Corp., d/b/a Lodging.com; Lowestfare.com, Inc.; Orbitz, Inc.; Orbitz, LLC; Priceline.com, Inc.; Priceline.com LLC; Sites59.com, LLC; Travelweb, Inc.; Travelnow.com, Inc.; Cheap Tickets, Inc.; and Sabre, Inc. Buncombe County sought "a declaratory judgment concerning its power, privilege, and right to audit and collect from [] defendants the North Carolina Occupancy Tax, N.C.G.S. 153A-155 . . . ." Buncombe County alleged that its ordinances imposed a room occupancy and tourism development tax on the gross receipts derived from the rental of any room, lodging, or similar accommodation furnished by any hotel, motel, inn, tourist camp, or other similar place within the county.[12] On the date the

---

[11] On 12 February 2008 Buncombe County filed notice of dismissal without prejudice of its claims against Travelport, Inc. (f/k/a Cendent Travel Distribution Services Group, Inc.).

[12] In its declaratory judgment action, Buncombe County asserts that on 23 August 1983 by Resolution #17680, the Buncombe County Board of Commissioners "enacted a two percent (2%) room occupancy and tourism development tax on the gross receipts derived from the rental of any room, lodging, or similar accommodation furnished by any hotel, motel, inn, tourist camp, or other similar place within the County"; on 26 August 1986, "the Commissioners by Resolution #18510 enacted and adopted an additional one percent (1%) occupancy tax"; and on 19 June 2001, the "Commissioners enacted an additional one percent (1%) room occupancy tax . . . ."

declaratory judgment action was filed, the room occupancy tax was four percent.

## Mecklenburg County

In Mecklenburg County Superior Court on 14 January 2008, Mecklenburg County filed a verified complaint and action for declaratory judgment against the same entities named in the Wake County complaint with the exception of Maupin-Taylor Holding, LLC, and Travelnow.com, LLC.[13] Mecklenburg County asserted that the action was to declare the rights of the parties concerning taxes and penalties due to Mecklenburg County from receipts realized by defendants derived from the rental of rooms, lodging and other accommodations furnished by hotels, motels, and similar places located in Mecklenburg County. Mecklenburg County alleged that at the time the complaint was filed, it imposed an eight percent "room occupancy tax" and defendants failure to remit the tax owed deprived Mecklenburg County of more than $1,000,000.00 annually.[14] In addition to its request

---

[13] On 4 February 2008, Mecklenburg County filed notice of voluntary dismissal without prejudice of its claim against Travelport Americas, LLC (f/k/a Cendant Travel Distribution Group, Inc.).

[14] "Mecklenburg County hereby levies a room occupancy tax of six percent (6%) of the receipts, net of any taxes or discounts, derived from the rental of any room, lodging, or accommodation

for an injunction, Mecklenburg County asserted the following claims: violation of occupancy tax ordinances; conversion; imposition of constructive trust; demand for accounting; unfair and deceptive trade practices; agency; and a claim for statutory penalties pursuant to both the Mecklenburg County tax ordinance and North Carolina General Statutes.

All defendants filed motions to have their respective actions designated as complex business cases. Thereafter, Chief Justice Sarah Parker issued orders designating each action as a complex business case.

---

furnished by a hotel, motel, inn, tourist camp, or similar place within Mecklenburg County that is subject to sale tax imposed by the State of North Carolina under Section 105-164.4(a)(3) of the North Carolina General Statutes." MECKLENBURG COUNTY, N.C., Amended and Restated Mecklenburg County Ordinance to impose and levy a room occupancy tax and a prepared food and beverage tax (Sept. 1, 1990).

"Mecklenburg County hereby levies a room occupancy tax of two percent (2%) of receipts, net of any taxes or discounts, derived from the rental of any room, lodging, or accommodation furnished by a hotel, motel, inn, tourist camp, or similar place within Mecklenburg County that is subject to sales tax imposed by the State of North Carolina under Section 105-164.4(a)(3) of the North Carolina General Statutes. This room occupancy tax is . . . in addition to the six percent (6%) Room Occupancy Tax previously levied by the Mecklenburg County Board of Commissioners which is in effect and remains in full force and effect." MECKLENBURG COUNTY, N.C., Mecklenburg ordinance to impose and levy a two percent room occupancy tax (Hall of Fame Complex Tax) (March 21, 2006).

On 4 April 2007, Special Superior Court Judge Albert Diaz of the North Carolina Business Court was appointed to preside over the designated complex business cases and granted defendants' motions to consolidate the actions filed in Buncombe County, Dare County, and Wake County for pretrial matters. Thereafter, Mecklenburg County's complaint was consolidated and joined with the other actions.

On 1 November 2010, all parties filed motions for summary judgment under seal; plaintiffs filed a consolidated motion as did defendants.

On 4 February 2011, a summary judgment hearing was held before the Honorable Calvin E. Murphy, Special Superior Court Judge presiding in the North Carolina Business Court. After considering the parties' motions and briefs, including supporting authority and arguments of counsel, the trial court granted defendants' motion for summary judgment and denied plaintiffs' motion for summary judgment. Plaintiffs appeal.

_____

On appeal, plaintiffs raise the following questions: (I) whether the trial court erred in concluding that defendants have no liability under the ordinances; (II) concluding that defendants are not contractually obligated to collect and remit

the occupancy tax; (III) concluding that there was no legal support for plaintiffs' collected but not remitted claim; and (IV) dismissing plaintiffs' claims for accounting, conversion, and constructive trust.

*Standard of Review*

"We review a trial court's order granting summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. We are to determine whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Adkins v. Stanly Cnty. Bd. of Educ.*, 203 N.C. App. 642, 644–45, 692 S.E.2d 470, 472 (2010) (citation and quotations omitted).

*I*

Plaintiffs first argue that the trial court erred in determining defendants have no liability under the respective ordinances of Wake, Dare, Buncombe, and Mecklenburg Counties for failure to collect and remit an occupancy tax on the sale price defendants impose on consumers. We disagree.

The respective ordinances of Wake, Dare, Buncombe, and Mecklenburg Counties impose a tax on the gross receipts derived from the rental of any room, lodging or accommodation furnished by a hotel, motel, inn, tourist camp, or "similar place" that is

subject to the State sales tax imposed under General Statutes, section 105-164.4(a)(3).

In its 19 December 2012 order, the trial court reasoned that "[t]o determine whether the Defendants are obligated to pay the Occupancy Tax under the counties' ordinances or resolutions, the Court must decide 'what' and 'who' is taxed." The court reasoned that as to the "who" is taxed, Mecklenburg and Wake counties impose the responsibility of collection upon the "operator of a taxable establishment." Dare and Buncombe counties impose the responsibility of tax collection upon the "operator of a business subject to a room occupancy tax." The court concluded that defendants "can not [sic] be classified as operators of 'taxable establishments' or 'businesses subject to a room occupancy tax' under any of Plaintiff's Occupancy Tax ordinances or resolutions, and are thus, not subject to the counties' Occupancy Taxes."

Plaintiffs contend the trial court violated the principle of statutory construction that all parts of a statute must be given effect and thereby rendered critical sections of the ordinances meaningless. Specifically, plaintiffs contend that as to "who" is taxed, the ordinances and enabling legislation make clear that the tax is levied against the occupant of the

room. As to "what" is taxed, the ordinances establish that the levy is applied to the gross receipts derived from the rental of the accommodation.

> When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself:
>
>> When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.

*State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010) (quoting *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006)).

"A county may impose taxes only as specifically authorized by act of the General Assembly." N.C. Gen. Stat. ' 153A-146 (2005). Our General Assembly has authorized Buncombe, Dare, Mecklenburg, and Wake counties to impose room occupancy taxes pursuant to appropriate county ordinances and resolutions. *See* 1991 N.C. Sess. Laws ch. 594 (Wake); 1985 N.C. Sess. Laws ch. 449 (Dare); and 1983 N.C. Sess. Laws. ch. 908, parts IV and VI (Mecklenburg and Buncombe). The General Assembly limited the applicability of the occupancy tax to gross receipts derived

from rental transactions also subject to our State sales tax. *See* 2001 N.C. Sess. Laws ch. ' 7.1 ("The Dare County Board of Commissioners may levy a room occupancy tax . . . [on] the gross receipts derived from the rental of the following in Dare County: (1) Any room, lodging, or similar accommodation subject to sales tax under G.S. 105-164.4(a)(3)[.]" (revisions omitted)); 2001 N.C. Sess. Laws ch. 162, ' 1 ("The Board of Commissioners of Buncombe County may levy a room occupancy and tourism development tax . . . [on] the gross receipts derived from the rental of accommodations within the county that are subject to sales tax imposed by the State under G.S. 105-164.4(a)(3)." (emphasis and revisions omitted)); 1989 N.C. Sess. Laws ch. 821, ' 1 ("Mecklenburg County may, by resolution of its Board of Commissioners, levy a room occupancy tax . . . [on] the gross receipts derived from the rental of any room, lodging, or accommodation furnished by a hotel, motel, inn, tourist camp, or similar place within the county that is subject to sales tax imposed by the State under G.S. 105-164.4(a)(3)."); and 1991 N.C. Sess. Laws ch. 594, ' 4 ("The Wake County Board of Commissioners may, by resolution, levy a room occupancy tax . . . [on] the gross receipts derived from the rental of any room, lodging, or accommodation furnished by a hotel, motel, inn,

tourist camp, or similar place within the county that is subject to the State sales tax imposed under G.S. 105-164.4(a)(3)."). To determine whether the gross receipts derived from the rentals in which defendants engage are subject to the occupancy tax, we must consider whether the gross receipts are subject to the State sales tax in accordance with our General Statutes, section 105-164.4(a)(3).

Section 105-164.4 ("Tax imposed on retailers") of the North Carolina General Statutes, in pertinent part, states the following:

> (a) . . . A privilege tax is imposed on a retailer . . . [on] the retailer's net taxable sales or gross receipts, as appropriate.
>
> . . .
>
> > (3) Operators of hotels, motels, tourist homes, tourist camps, and similar type businesses . . . are considered retailers under this Article. A tax at the general rate of tax is levied on the gross receipts derived by these retailers from the rental of any rooms, lodgings, or accommodations furnished to transients for a consideration.

N.C. Gen. Stat. ' 105-164.4(a)(3) (2005) (effective for sales made on or after July 1, 2007).

Whether the gross receipts derived from the rentals in

which defendants engage are subject to the occupancy tax hinges on whether defendants are "retailers" within the meaning of section 105-164.4(a)(3). *See id.* ("A privilege tax is imposed on . . . the retailer's net taxable sales or gross receipts . . . . . Operators of hotels, motels, tourist homes, tourist camps, and similar type businesses . . . are considered retailers under this Article.").

The trial court found that plaintiffs did not contend defendants were operators of hotels, motels, tourist homes, or tourist camps. Therefore, the court considered only whether defendants were operators of "similar type businesses."

In addressing this issue, we note with favor the reasoning of the Fourth Circuit Court of Appeals in *Pitt Cnty. v. Hotels.com, GP, LLC*, 553 F.3d 308 (4th Cir. 2009), considering "whether the phrase 'operators of hotels, motels, tourist homes, tourist camps, and similar type businesses' in § 105-164.4(a)(3) in the North Carolina sales tax statute applies to online travel companies." *Id.* at 313. In considering whether OTC and hotels operated "similar type businesses," the Court found applicable the principle of *ejusdem generis*, the canon of statutory construction standing for the proposition that "where general words follow a designation of particular subjects or things, the

meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated." *Id.* (citing *Smith v. Smith*, 314 N.C. 80, 331 S.E.2d 682, 686–87 (1985)); *see also State ex rel. Utilities Comm'n v. Envtl. Def. Fund*, 214 N.C. App. 364, 368, 716 S.E.2d 370, 373 (2011) ("North Carolina courts have followed this explanation of how the doctrine of *ejusdem generis* should be applied by employing the doctrine when a list of specific terms is followed by a general term. *See Liborio v. King*, 150 N.C. App. 531, 536–37, 564 S.E.2d 272, 276 (2002) (interpreting the term "misrepresentation" to be limited to knowing and intentional behavior, where the term followed the words fraud and deception); [*Smith*, 314 N.C. at 87, 331 S.E.2d at 687] (interpreting a provision allowing the court to consider "any other factor which the court finds to be just and proper" to be limited to economic factors, where the provision followed eleven other provisions having to do with the economy of the marriage); [*State v. Lee*, 277 N.C. 242, 244, 176 S.E.2d 772, 774 (1970)] (interpreting the phrase "or other like weapons" to be limited to automatic or semiautomatic weapons, where the phrase followed a specific list of automatic and semiautomatic

weapons).")).

In section 105-164.4(a)(3), the phrase "similar type businesses" follows the list: "hotels, motels, tourist homes, [and] tourist camps[.]" N.C.G.S. ' 105-164.4(a)(3). A "hotel" is defined as "[a]n establishment that provides lodging and usu [sic]. Meals and other services for travelers and other paying guests." AMERICAN HERITAGE COLLEGE DICTIONARY 658 (3d ed. 1993). A motel is "[a]n establishment that provides lodging for motorists in rooms usu. having direct access to a parking area." *Id.* at 890. A "tourist home" is "a house in which rooms are available for rent to transients." Tourist home definition, merriam-webster.com, http://www.merriam-webster.com/dictionary/tourist%20home (last visited August 11, 2014). We were unable to find a definition for "tourist camp,"; however, we note that "tourist" is defined as "[o]ne who travels for pleasure," and "camp" is defined as "[a] place where tents, huts, or other temporary shelters are set up . . . . [, or] [a] place in the country that offers simple group accommodations and organized recreation or instruction." AMERICAN HERITAGE COLLEGE DICTIONARY 202, 1431. A common characteristic of such establishments is that they are physical structures with rooms or at least physical locations. Per section 105-164.4(a)(3),

the "operator" of such an establishment is a "retailer." "Operator" is defined as "[t]he owner or manager of a business or industrial enterprise." AMERICAN HERITAGE COLLEGE DICTIONARY 957.

Plaintiffs do not contend that defendants are owners or managers of the establishments providing accommodations; rather, plaintiffs argue that this Court should interpret the word "business" broadly. However, such an analysis would ignore the requirements of section 105-164.4(a)(3), that defendants be operators of "*similar type* businesses." We hold that defendants are not operators of hotels, motels, tourist homes, or tourist camps within the meaning of section 105-164.4(a)(3). This holding is consistent with the reasoning of the trial court and the *Pitt* Court. *See Pitt Cnty.*, 553 F.3d at 313 (hotels, motels, tourist homes, and tourist camps – "all provide physical establishments . . . where guests can stay. A business that arranges for the rental of hotel rooms over the internet, but that does not physically provide the rooms, is not a business that is of a similar type to a hotel, motel, or tourist home or camp."). Defendants are neither operators nor retailers within the meaning of section 105-164.4(a)(3). *See* N.C.G.S. ' 105-164.4(a)(3) ("A privilege tax is imposed on . . . the retailer's net taxable sales or gross receipts . . . . Operators of

hotels, motels, tourist homes, tourist camps, and similar type businesses . . . are considered retailers under this Article."); *see also Pitt Cnty.*, 553 F.3d at 314 (holding that an online travel company is not a retailer within the plain meaning of General Statutes, section 105-164.4(a)(3)).

Applying our holding that defendants are not "retailers" within the meaning of General Statutes, section 105-164.4(a)(3)[15], we must also conclude that defendants' gross

---

[15] We note that pursuant to 2009 N.C. Sess. Laws 2010-31, ' 31.6(a) (effective July 1, 2010), N.C. Gen. Stat. ' 105-164.4(a)(3) was re-written. As re-written, section 105-164.4(a)(3) includes the following language:

> Gross receipts derived from the rental of an accommodation include the sales price of the rental of the accommodation. . . . The sales price of the rental of an accommodation marketed by a facilitator includes charges designated as facilitation fees and any other charges necessary to complete the rental.
>
> A person who provides an accommodation that is offered for rent is considered a retailer under this Article. A facilitator must report to the retailer with whom it has a contract the sales price a consumer pays to the facilitator for an accommodation rental marketed by the facilitator. A retailer must notify a facilitator when an accommodation rental marketed by the facilitator is completed and, within three business days of receiving the notice, the facilitator must send the retailer the portion of the sales price the facilitator owes the retailer and

receipts are not subject to the State sales tax under section 105-164.4(a)(3) ("A tax . . . is levied on the gross receipts derived by these retailers . . . ."). Thus, the gross receipts defendants derive from the rentals are not subject to plaintiffs' room occupancy tax. *See* 2001 N.C. Sess. Laws ch. 439 ' 7.1; 2001 N.C. Sess. Laws ch. 162 ' 1; 1991 N.C. Sess. Laws ch. 594, ' 4; and 1989 N.C. Sess. Laws ch. 821, ' 1. Because the trial court did not err in determining that defendants have no liability under the respective ordinances of Wake, Dare, Buncombe, and Mecklenburg Counties for failure to collect and remit an occupancy tax on the sale price defendants impose on consumers, plaintiffs' argument is overruled.

*II*

Plaintiffs next argue that the trial court erred in

---

the tax due on the sales price.

. . .

The following definitions apply in this subdivision:

. . .

b. Facilitator. – A person who is not a rental agent and who contracts with a provider of an accommodation to market the accommodation and to accept payment from the consumer for the accommodation.

2009 N.C. Sess. Laws ch. 2010-31, '31.6(a).

determining that defendants are not contractually obligated to collect and remit the occupancy tax. We disagree.

In its order, the trial court concluded that as to a recovery based on a theory of contractual undertaking, "Plaintiffs failed to provide sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it." The court went on to reason that even if it were to consider plaintiffs' claim for recovery under a theory of contractual undertaking, "it would [] have to acknowledge that there is no legal support for such a theory in North Carolina's case law." For these reasons, the trial court granted defendants' motion to dismiss the claim.

"The grant of a motion to dismiss is reviewed *de novo* on appeal." *Hayes v. Peters*, 184 N.C. App. 285, 287, 645 S.E.2d 846, 847 (2007) (citation omitted).

Pursuant to General Statutes, section 1A-1, Rule 8,

> [a] pleading which sets forth a claim for relief . . . shall contain

> (1) A short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief and

> (2) A demand for judgment for the relief to which he deems himself entitled.

N.C. Gen. Stat. ' 1A-1, Rule 8(a) (2013). By enacting section 1A-1, Rule 8(a), our General Assembly adopted the concept of notice pleading. *See Sutton v. Duke*, 277 N.C. 94, 100, 176 S.E.2d 161, 164 (1970). Under notice pleading, "a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought." *Id.* at 102, 176 S.E.2d at 165 (citation omitted). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Pyco Supply Co., Inc. v. Am. Centennial Ins. Co.*, 321 N.C. 435, 442—43, 364 S.E.2d 380, 384 (1988) (citation omitted). "Despite the liberal nature of the concept of notice pleading, a complaint must nonetheless state enough to give the substantive elements of at least some legally recognized claim . . . ." *Hayes v. Peters*, 184 N.C. App. 285, 287, 645 S.E.2d 846, 847 (2007) (citation and quotations omitted).

Plaintiffs contend defendants had sufficient notice of

plaintiffs' contractual obligation theory from the complaints and plaintiffs' summary judgment trial briefs.

In their brief to this Court, plaintiffs combine and point to five allegations scattered throughout the complaint filed by Mecklenburg County and argue the allegations are sufficient to provide defendants with notice of plaintiffs' contractual obligation theory.

> Mecklenburg County's Complaint alleges that: (1) Defendants contract with local hotels for rooms at negotiated discounted rates and "charge and collect the Tax from occupants at the time of the sale based on the marked up room rates"; (2) Defendants were "authorized to act on behalf of the hotels"; (3) Defendants, as "agents" for the hotels, "were required to collect the Tax from the consumers of the rooms"; (4) Defendants, as agents for the hotels, have collected the Tax but failed to pay the full amount due to Plaintiffs; and (5) Plaintiffs are entitled to a declaratory judgment that Defendants are agents for taxable establishments and "as such, are required to collect the County's full tax from the consumers of the rooms."

The referenced allegations were found in separate sections of the complaint including: in assertions of underlying fact; in a request for a declaratory judgment; in a claim for recovery based on a theory of agency; and in plaintiff Mecklenburg County's prayer for relief. However, even reading these statements together, we cannot interpret them as providing

notice of a cognizable claim. Plaintiffs attempt to seek recovery for breach of contract based on a contractual obligation to collect the occupancy tax on the gross receipts defendants derived from the rental of accommodations. On this record, we cannot find that plaintiffs' contract theory has been sufficiently pled and therefore, find no error in the trial court's ruling granting defendants' motion to dismiss this claim. Though not specifically argued, plaintiffs reference statements in the complaints of Wake County, Buncombe County, and Dare County. A review of these complaints reveals a repetition of some portions of the allegations made in the Mecklenburg County complaint, but they are likewise insufficient to provide notice of a cognizable claim. Thus, we find insufficient notice of a contractual obligation claim as to the complaints of Buncombe, Dare, and Wake Counties.

Plaintiffs further contend that a claim raised during summary judgment may provide sufficient notice to the opposing party where the party asserting the claim did not earlier disavow it. In support of their contention, plaintiffs cite cases from the Sixth Circuit Federal Court interpreting Federal Rules of Civil Procedure:

> Where language in a complaint is ambiguous,
> the Sixth Circuit employs a "course of the

> proceedings test" to determine whether defendants have received notice of the plaintiff's claims, analyzing the adequacy of notice on a case-by-case basis. *Accord Moore v. City of Harriman*, 272 F.3d 769, 772, 774 (6th Cir.2001) (en banc) (plurality opinion) ("Subsequent filings in a case may rectify deficiencies in the initial pleadings." (citations omitted)). A plaintiff may sufficiently notify a defendant of an argument by raising it in a response to summary judgment, provided that the party does not disavow its intent to use the argument earlier in the proceedings.

*Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 435 (6th Cir. 2012) (unpublished) (citations and quotations omitted).

Interpreting our Rules of Civil Procedure as to notice pleading, our Supreme Court has held that "notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Pyco Supply Co., Inc.*, 321 N.C. at 442—43, 364 S.E.2d at 384. Plaintiffs raised a claim for the first time in a motion for summary judgment and on appeal, provide no authority from our General Statutes or North Carolina jurisprudence to support their argument to do so. We affirm the trial court's dismissal of plaintiff's claim that defendants are contractually obligated to collect and remit the occupancy tax.

*III*

Plaintiffs argue the trial court erred by dismissing their claim that defendants collected but failed to remit taxes charged on the sales price paid by consumers. Specifically, plaintiffs contend Judge Murphy impermissibly overruled the prior holding of another superior court judge, Judge Diaz. We disagree.

"Litigants and superior court judges must remain mindful that the power of one judge of the superior court is equal to and coordinate with that of another." *Adkins v. Stanly Cnty. Bd. of Educ.*, 203 N.C. App. 642, 651, 692 S.E.2d 470, 476 (2010) (citation and quotations omitted).

> The well established rule in North Carolina is that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action.

*Calloway v. Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972) (citation omitted).

Here, Judge Diaz was presented with a challenge to plaintiffs' claim for collected but not remitted taxes in the form of defendants' Rule 12(b)(6) motion to dismiss. When the motion was denied, defendants subsequently challenged the same

claim in the form of a motion for summary judgment before Judge Murphy.

> The test [for a] Rule 12(b)(6) [motion] is whether the pleading is legally sufficient. The test on a motion for summary judgment made under Rule 56 and supported by matters outside the pleadings is whether on the basis of the materials presented to the courts there is any genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. Therefore, the denial of a motion to dismiss made under Rule 12(b)(6) does not prevent the court, whether in the person of the same or a different superior court judge, from thereafter allowing a subsequent motion for summary judgment made and supported as provided in Rule 56.

*Barbour v. Little*, 37 N.C. App. 686, 692, 247 S.E.2d 252, 256 (1978). "[T]he Rule 12(b)(6) motion is addressed solely to the sufficiency of the complaint . . . ." *Indus., Inc. v. Constr. Co.*, 42 N.C. App. 259, 263, 257 S.E.2d 50, 53 (1979) (citation omitted).

In his 19 November 2007 order addressing defendants' motion to dismiss plaintiffs' claim for failure to remit taxes, Judge Diaz gave the following summary as to plaintiffs' allegations:

> (71) The Complaints in these cases allege (either directly or by implication) that Defendants are in fact charging and collecting the Occupancy Tax from consumers, but not remitting to Plaintiffs the full amount collected. In fact, Plaintiffs allege Defendants are charging and

collecting the tax on the higher retail rate charged to consumers, but only remitting to Plaintiffs an amount of tax based on the lower wholesale rate paid to hotel owners, thereby pocketing the difference. Plaintiffs also allege Defendants are not filing occupancy returns, as required by law. . . .

Based on these allegations, Judge Diaz concluded that "Defendants have not complied with the plain language of the Occupancy Tax (and the corresponding enabling acts) requiring them to account for and remit all such taxes." Thus, "[a]t this stage . . . the Court need only look to Plaintiffs' pleadings to conclude that dismissal of the principal claims is not appropriate." Judge Diaz, therefore, denied defendants' motion to dismiss pursuant to Rule 12(b)(6).

On 4 February 2011, Judge Murphy heard arguments from plaintiffs and defendants on cross motions for summary judgment. Based on their briefs and arguments before the trial court, Judge Murphy granted summary judgment in favor of defendants, dismissing plaintiffs' claim for collected but not remitted taxes.

In his order, Judge Murphy discussed three cases presented by plaintiffs in support of their motion: "*City of Rome v. Hotels.com*, No.4:05-CV-249-HLM, 2006 U.S. Dist. LEXIS 56369 (N.C. May 8, 2006)"; "*Expedia, Inc. v. City of Columbus*, 681

S.E.2d 122 (Ga. Sup. Ct. 2009)"; and "*City of Gallup v. Hotels.com, L.P.*, No.06-0549-JC, 2007 U.S. Dist. LEXIS 86720 (January 30, 2007)." Each case dealt with similar questions of tax liability and OTCs in other jurisdictions. Judge Murphy observed that where an OTC had been held responsible for remitting a tax, the conclusion was predicated upon a statutory requirement or contractual provision imposing upon the OTC the responsibility for collecting the tax. By comparison, Judge Murphy noted that our North Carolina General Statutes did not impose the same duty upon defendants, and plaintiffs provided no authority supporting a recovery predicated on a theory of contractual undertaking. Accordingly, Judge Murphy concluded that "Plaintiffs' [sic] have been unable to direct this Court to any binding legal precedent to support a 'collected-but-not-remitted' theory of recovery" and on this basis, granted defendants' motion to dismiss the claim.

Judge Diaz and Judge Murphy addressed motions in this case at different stages in the action and based on different rules. Judge Diaz concluded pursuant to Rule 12(b)(6) that the factual allegations in plaintiffs' complaints were legally sufficient so as to not preclude their claims for recovery of taxes. *See Barbour*, 37 N.C. App. at 692, 247 S.E.2d at 256 ("The test [for

a] Rule 12(b)(6) [motion] is whether the pleading is legally sufficient."). Thereafter, Judge Murphy concluded pursuant to Rule 56 that as to the issue of whether defendants were subject to the Occupancy Tax, plaintiffs failed to provide any authority that defendants had a legal duty to collect taxes. *See* N.C. Gen. Stat. ' 1-1A, Rule 56(c) (2013) (Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."). Based on our jurisprudence, Judge Murphy's ruling pursuant to Rule 56 was proper. Therefore, plaintiffs' argument is overruled.

*IV*

Lastly, plaintiffs argue that the trial court erred in dismissing their claims for accounting, conversion, and constructive trust. We disagree.

Again, "[w]e review a trial court's order granting summary judgment *de novo* . . . ." *Stanly Cnty. Bd. of Educ.*, 203 N.C. App. at 644, 692 S.E.2d at 472 (citation omitted).

*Accounting*

In the complaints filed by Dare County, Mecklenburg County,

and Wake County, each county's demand for an accounting was predicated upon the assertion that defendants were under a legal obligation based on their respective Occupancy Tax resolution or ordinance to collect and remit taxes to the County on the gross receipts derived by them as compensation or consideration for renting rooms in the county. Buncombe County's declaratory judgment action sought a ruling declaring "its affirmative rights to audit and collect occupancy tax obligations owed by these Defendants to [] Plaintiff."

In Issue I, we held that the enabling legislation enacted by our General Assembly as to Buncombe, Dare, Mecklenburg, and Wake counties allowing the counties to impose an occupancy tax by resolution did not encompass the transactions wherein consumers rented lodging accommodations through defendants' websites. Therefore, as plaintiffs cannot establish that defendants were under a legal obligation based on their individual occupancy tax resolutions to collect and remit taxes to the respective county, plaintiffs cannot prevail on their demands for accounting. Accordingly, we overrule plaintiffs' argument and affirm the trial court's ruling dismissing plaintiffs' demand for accounting.

*Conversion*

First, we note that while claims of conversion were asserted in the complaints of Dare County, Mecklenburg County, and Wake County, the trial court addressed only Mecklenburg County's conversion claim in the trial court's summary judgment order.

On 19 November 2007, the trial court granted defendants' 12(b)(6) motion to dismiss the conversion claims brought by plaintiffs Buncombe County, Dare County, and Wake County. No appeal was taken by Buncombe County, Dare County, and Wake County from these dismissals.

On 14 January 2008, Mecklenburg County filed its complaint asserting a claim for conversion. In its complaint, Mecklenburg County alleged the following:

> Defendants, upon information and belief, keep the difference between the amount of Tax charged to the public and the amount of Tax remitted to the hotel, motel, or inn, which then remits this lower tax amount to the County. At all times herein mentioned, Defendants wrongfully possessed and/or controlled the monies which constitute this difference between the amount of Tax charged to the public and the amount of Tax remitted to the County. Defendants have converted or taken these Tax monies for their own use and benefit, thereby permanently depriving the County of the use and benefit thereof.

Following the assignment of Mecklenburg County's complaint to the business court and the consolidation of these actions, both

plaintiffs and defendants filed motions for summary judgment. The trial court addressed only Mecklenburg County's claim for conversion in its summary judgment order and dismissed the claim.

"In North Carolina, conversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Myers v. Catoe Constr. Co.*, 80 N.C. App. 692, 695, 343 S.E.2d 281, 283 (1986) (citation omitted).

> The general rule is that there is no conversion until some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property. Therefore, two essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant.

*Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 489 (2008) (citation and quotations omitted). "[T]he general rule is that money may be the subject of an action for conversion only when it is capable of being identified and described." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 528, 723 S.E.2d 744, 750 (2012) (citation omitted).

The requirement that there be earmarked

> money or specific money capable of identification before there can be a conversion has been complicated as a result of the evolution of our economic system. Recognizing this reality, numerous courts around the country have adopted rules requiring the specific identification of a sum of money, rather than identification of particular bills or coins.

*Id.* at 528—29, 723 S.E.2d at 750 (citations and quotations omitted). "In the context of this conversion claim, we conclude that funds transferred electronically may be sufficiently identified through evidence of the specific source, specific amount, and specific destination of the funds in question." *Id.* at 529, 723 S.E.2d at 750—51 (addressing a claim involving transfers of funds in specific dollar amounts totaling approximately $888,000.00).

Here, Mecklenburg County's conversion claim is not one for a specific amount of taxes alleged due, much less particular bills and coins; rather, Mecklenburg County's claim is for a category of monies allegedly owed, taxes. Even reading *Variety Wholesalers, Inc.*, broadly to presume that in the context of any conversion claim where funds are transferred electronically the establishment of the funds' specific source, specific amount, and specific destination is sufficient to connote identification, Mecklenburg County's complaint fails to allege

such requirements. *See id.; see also State ex rel. Pilard v. Berninger*, 154 N.C. App. 45, 57, 571 S.E.2d 836, 844 (2002) (holding the evidence supported the conversion claim where the spouse of the decedent, acting as an administratix, failed to properly distribute the decedent's share of three $75,000.00 certificates of deposit as a portion of his estate). Therefore, we see no error in the trial court's dismissal of Mecklenburg County's conversion claim.

*Constructive Trust*

> A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.

*Variety Wholesalers, Inc.*, 365 N.C. at 530, 723 S.E.2d at 751 (citation omitted).

Here, plaintiffs have been unable to establish any genuine issue of material fact as to whether defendants have retained monies collected from the rental of accommodations in the respective counties which were "acquired through fraud, breach of duty or some other circumstance making it inequitable for [defendants] to retain it[.]" *Id.* As such, summary judgment

was appropriate.    Accordingly, we affirm the trial court's dismissal of plaintiffs' claims seeking imposition of a constructive trust.

Affirmed.

Judges McGEE and STROUD concur.