Encompass Servs., PLLC v. Maser Consulting P.A., 2019 NCBC 66.

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 1782

ENCOMPASS SERVICES, PLLC and
ENCOMPASS SERVICES, LLC d/b/a
ENCOMPASS ENERGY SERVICES,
LLC,

Plaintiffs,

v.

MASER CONSULTING P.A. and
CHRISTOPHER HILSMAN,

Defendants.

**ORDER AND OPINION ON
CHRISTOPHER HILSMAN'S
MOTION TO DISMISS, OR
ALTERNATIVELY, FOR JUDGMENT
ON THE PLEADINGS AND MASER
CONSULTING P.A.'S MOTION TO
DISMISS**

THIS MATTER comes before the Court on Defendant Christopher Hilsman's ("Hilsman") Motion to Dismiss or, Alternatively, for Judgment on the Pleadings ("Hilsman's Motion," ECF No. 38), and Defendant Maser Consulting P.A.'s ("Maser") Motion to Dismiss ("Maser's Motion," ECF No. 63; collectively with Maser's Motion, the "Motions").

THE COURT, having considered the Motions, the briefs filed in support of and in opposition to the Motions, the arguments of counsel at the hearing, and other appropriate matters of record, concludes that the Motions should be GRANTED, in part, and DENIED, in part, for the reasons set forth herein.

> *Oak City Law LLP, by Samuel Pinero for Plaintiffs Encompass Services, PLLC and Encompass Services, LLC d/b/a Encompass Energy Services, LLC.*
>
> *McDermott Will & Emery, LLP, by Rachel B. Cowen and Emory D. Moore Jr. for Plaintiffs Encompass Services, PLLC and Encompass Services, LLC d/b/a Encompass Energy Services, LLC.*

*Ragsdale Liggett PLLC, by John M. Nunnally for Defendant Maser Consulting P.A.*

*Williams Mullen, by Edward S. Schenk III and John W. Holton for Defendant Christopher Hilsman.*

McGuire, Judge.

I.        Nature of Defendants' Motions

1.      As an initial matter, the Court must determine under what rules each of the Defendants are entitled to move for dismissal. Pursuant to North Carolina Rule of Civil Procedure ("Rules") a motion to dismiss under Rules 12(b) (1)–(7) "shall be made *before pleading* if a further pleading is permitted." N.C.G.S. § 1A-1, Rule 12(b) (emphasis added). Accordingly, this Court has held that under the plain language of Rule 12(b), "a motion to dismiss for failure to state a claim must be . . . filed prior to an answer.*" Johnston v. Johnston Props., Inc.*, 2018 NCBC LEXIS 119, at *14 (N.C. Super. Ct. Nov. 15, 2018); *see also New Friendship Used Clothing Collection, LLC v. Katz*, 2017 NCBC LEXIS 72, at *24 (N.C. Super. Ct. Aug. 18, 2017). Hilsman filed Hilsman's Motion, seeking dismissal pursuant to Rule 12(b)(6), or alternatively, for judgment on the pleadings pursuant to Rule 12(c), at 3:42 p.m. on April 3, 2019. (ECF No. 38.) Hilsman filed his answer at 4:04 p.m. on April 3, 2019. (ECF No. 40.) Accordingly, Hilsman's Motion was filed before his answer and is appropriately treated as a motion to dismiss under Rule 12(b)(6), and the Court need not consider his alternative motion pursuant to Rule 12(c).

2.      On the other hand, Maser moves for dismissal solely under Rule 12(b)(6). Maser filed its answer on April 8, 2019 (ECF No. 41), then waited over two

months to file Maser's Motion on June 14, 2019 (ECF No. 63). Therefore, pursuant to Rule 12(b), Maser's Motion is untimely and cannot be considered as a 12(b)(6) motion to dismiss for failure to state a claim.

3. The Court notes that in *Johnston,* this Court concluded that the interplay between Rules 12(b) and 12(h)(2)[1] permits the Court to treat a post-answer Rule 12(b)(6) motion as a 12(c) motion for judgment on the pleadings. *See Johnston*, 2018 NCBC LEXIS 119, at *14–15. In *Johnston,* the Court, in its discretion, determined that defendants' 12(b)(6) motion filed minutes after their answer could properly be treated as a Rule 12(c) motion. By contrast, Maser's Motion was filed two months after his initial answer. Moreover, Maser has not argued that his Motion should be treated as one for judgment on the pleadings under Rule 12(c).

4. On these facts, the Court concludes, in its discretion, that Maser's Motion should not be treated as a Rule 12(c) motion for judgment on the pleadings. Therefore, Maser's Motion should be DENIED as untimely.

II. Facts

5. The facts relevant to the determination of the Motions are drawn from the Verified Complaint. ("Verified Complaint," ECF No. 3.)

6. Plaintiffs Encompass Services, PLLC and Encompass Services, LLC d/b/a Encompass Energy Services, LLC (collectively, "Encompass") provide land surveying services for oil and gas transmission pipelines. Encompass's services

---

[1] Rule 12(h)(2) provides "[a] defense of failure to state a claim upon which relief can be granted, a defense of failure to join a necessary party, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."

include, *inter alia,* "conducting pipe line surveys, mapping, routing, and pipeline integrity testing[.]" (ECF No. 3, at ¶ 8.)

7.       Encompass submits bids to customers to obtain particular projects. To prepare bids, Encompass uses data it compiles including: "(i) cost data for prior similar projects, (ii) maps and drawings developed with the use of expensive investments in technology such as radar scanning, and satellite and aerial imaging, [and] (iii) knowledge of constructability, environmental, and socio-economic issues." (*Id.* at ¶ 12.) Encompass "considers this data confidential and prohibits its disclosure to third parties." (*Id.* at ¶ 13.) Encompass stores its confidential information on a cloud-based computer server ("the Server"), to which only certain authorized employees are allowed access. Authorized employees are given a user name and password and their access is controlled and monitored by a third-party information technology provider, CMIT Solutions of Pittsburgh North ("CMIT"). (*Id.* at ¶ 22; Declar. of Sunil Yalamarthy, ECF No. 3 at Ex. A, ¶ 5.)[2]

8.       Encompass hired Hilsman in April 2015 as a survey coordinator. At the time of his hire, Hilsman executed an Employment Agreement. (ECF No. 3, at ¶ 15; "Employment Agreement," ECF No. 3 at Ex. B.) By entering into the Employment Agreement, Hilsman agreed "during his employment and for a one-year period thereafter, not to disclose to or make use of for any person, corporation or other entity,

---

[2] "[W]hen ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). The declaration is attached to and referenced in the Verified Complaint.

any proprietary files, trade secrets or other confidential information defined as, the business, clients, methods, operations, financing or services of [Encompass]." (ECF No. 3, at ¶ 17; ECF No. 3 at Ex. B, ¶ 8.)

9. As a survey coordinator, Hilsman was directly involved with the preparation of Encompass's bid proposals and had access to Encompass's confidential information stored on the Server. (ECF No. 3, at ¶¶ 15–16.)

10. On August 3, 2018, Hilsman notified Encompass that he was resigning his employment to work for Maser. Maser is a direct competitor of Encompass. (*Id.* at ¶ 19.) Maser recruited Hilsman to work as a senior project manager, and to establish an office in Wilmington, North Carolina. (*Id.* at ¶¶ 18, 21.) Hilsman's last day of work with Encompass was on or about August 18, 2018.

11. Encompass notified CMIT of Hilsman's resignation and requested that Hilsman's access to the Server be revoked effective as of August 18, 2018. (*Id.* at ¶ 23.)

12. On January 4, 2019, CMIT discovered that it had failed to revoke Hilsman's access to the Server when he resigned. (*Id.* at ¶ 24; ECF No. 3 at Ex. A, ¶ 8.) A report prepared by CMIT shows that on August 17 and 18, 2018, the last two days of Hilsman's employment with Encompass, he downloaded numerous documents from the Server. On August 17, 2018, Hilsman downloaded one-hundred sixty-three (163) documents from the Server including: "budget information, rate tables, materials information, and design files for various projects." (ECF No. 3, at ¶ 25.) On August 18, 2018, Hilsman downloaded thirty-nine (39) documents related to a

project for Encompass's customer AECOM, and on August 20, 2018, two days after he left Encompass, Hilsman downloaded nine (9) more documents related to AECOM Project 61203 including "a plat template, multiple deed plat tracking spreadsheets, survey plats, and project progress information." (*Id.* at ¶¶ 25–26.) From August 17 through December 11, 2018, Hilsman downloaded more than six-hundred (600) documents from the Server. (*Id.* at ¶ 28.)

13. Hilsman and Maser used Encompass's documents to compete with Encompass on "projects like the Line 328 Project, the Line 202 Project, and the Duke RLNG Project." (*Id.* at ¶ 29.) On August 27, 2018, four days prior to the due date for the Line 328 proposal, Hilsman accessed the Server and downloaded "Encompass'[s] proposal documents, including Encompass's Scope of Work, which sets forth what Encompass is willing to agree to in relation to the work anticipated." (*Id.* at ¶¶ 30–31.) Hilsman and Maser undercut Encompass's bid on the Line 328 Project and won the bid. (*Id.* at ¶¶ 32–33.)

14. On October 18, 2018, Hilsman downloaded drawing templates and deliverables related to the Line 202 project for Kinder Morgan. Hilsman "pulled drawing templates and deliverables to assist Maser to know how to bid the project. This was in addition to three documents he downloaded on August 17 relating to Encompass's projects with Kinder Morgan." (*Id.* at ¶ 35.) Maser's bid for the Line 202 Project was ultimately unsuccessful, however, the table in Maser's bid proposal was identical to Encompass's. (*Id.* at ¶ 36.)

15.  Finally, on November 5, 2018, Hilsman accessed the Server and viewed confidential information related to Encompass's past proposals for projects comparable to the Duke RLNG Project, "*e.g.*, Encompass'[s] proposal for a prior project titled 'Duke_Line 328 Extension_Proposal_R0.docx,' and related fee tables in a file titled 'PNG – Line 328 Extension_Fee Tables_Rev0.xlsx.'" (*Id.* at ¶ 38.)  Maser was subsequently awarded the Duke RLNG Project contract.  (*Id.* at ¶¶ 39–40.)

III.  Procedural History

16.  Encompass initiated this action by filing its Verified Complaint on January 30, 2019.  (ECF No. 3.)  This matter was designated as a complex business case and assigned to the undersigned on January 31, 2019.  (Des. Ord., ECF No. 1; Assign. Ord., ECF No. 2.)

17.  In the Verified Complaint, Encompass makes a claim against Hilsman for conversion, and claims against both Hilsman and Maser (collectively, "Defendants")  for: misappropriation of trade secrets in violation of the North Carolina Trade Secrets Protection Act, N.C.G.S. § 66-152, *et seq*. ("TSPA"); tortious interference with prospective economic advantage; computer trespass in violation of N.C.G.S. § 14-458; § 1-539.2A; unfair trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1. ("UDTPA"); and punitive damages pursuant to N.C.G.S. § 1D-1, *et seq*.

18.  On April 3, 2019, Hilsman filed Hilsman's Motion and a brief in support. (ECF No. 38; Hilsman Br. in Supp., ECF No. 39.)  On April 3, 2019, Hilsman also filed his answer to the Verified Complaint.  (Hilsman Answer to Compl., ECF No. 40.)

On April 8, 2019, Maser filed its answer to the Verified Complaint. (Maser Answer to Compl., ECF No. 41.) On May 21, 2019, Maser filed an amended answer adding a counterclaim against Encompass. (Maser Amend. Answer, ECF No. 61.) On June 14, 2019, Maser filed Maser's Motion along with a supporting brief. (ECF No. 63; Maser Br. in Supp., ECF No. 64.) On June 20, 2019, Encompass filed a reply to Maser's counterclaim. (Pls. Answer to Maser Counterclaim, ECF No. 65.)

19. On June 7, 2019, Encompass filed a brief in opposition to Hilsman's Motion. (Pls. Br. in Opp. to Hillsman Mot. to Diss., ECF No. 62.) On June 28, 2019, Encompass filed a brief in opposition to Maser's Motion. (Pls. Br. in Opp. to Maser Mot. to Diss., ECF No. 67.) On August 7, 2019, the Motions came before the Court for a hearing and the Court heard oral argument from counsel. The Motions are now ripe for disposition.

IV.   Analysis

**A. Standard of Review**

20. Pursuant to Rule 12(b)(6), Hilsman moves to dismiss Encompass's claims for conversion, misappropriation of trade secrets, and computer trespass for failure to state a claim upon which relief may be granted.

21. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Our appellate courts frequently reaffirm that

North Carolina is a notice pleading state. *See, e.g., Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 647, 762 S.E.2d 477, 486 (2014)) ("Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought.").

22. "It is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).

23. In ruling on a 12(b)(6) motion, the court construes the complaint liberally and accepts all allegations as true. *See Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)).

### B. *Conversion*

24. In its first claim, Encompass alleges that Hilsman is liable for conversion because he took "Encompass'[s] business information and documents and converted those to use for his own purposes . . . without consent[.]" (ECF No. 3, at ¶ 42.) Encompass also alleges that it has suffered damages and that the conversion was carried out "willfully and wantonly . . . repeatedly and surreptitiously[.]" (*Id.* at ¶¶ 43–44.)

25. Hilsman argues that Encompass's conversion claim fails for three reasons. (ECF No. 39, at p. 5.) The Court need only address Hilsman's first argument for dismissal of Encompass's conversion claim. Hilsman avers that the Verified Complaint fails to allege that Encompass has been "deprived from the information at issue or excluded from its use" which is a necessary element of a claim for conversion. (ECF No. 39, at p. 5.) The Court agrees.

26. Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (internal citation and quotation marks omitted). "There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Id.*

27. Encompass relies on federal case law to argue that the "deprivation" necessary for a conversion claim occurs when electronic data is copied but the owner

retains access to the data. (ECF No. 62 at .pdf, pp. 2–3; citing *Bridgetree, Inc. v. Red F Mktg. LLC*, 2013 U.S. Dist. LEXIS 15372, at \*49 (W.D.N.C. Feb. 5, 2013).) However, this Court has, time and again, expressly rejected the *Bridgetree* holding. *See, e.g., New Friendship Used Clothing Collection, LLC*, 2017 NCBC LEXIS 72, at \*38–39; *Duo-Fast Carolinas, Inc. v. Scott's Hill Hardware & Supply Co.*, 2018 NCBC LEXIS 2, at \*36 (N.C. Super. Ct. Jan. 2, 2018); *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 51, at \*18 (N.C. Super. Ct. June 9, 2017). "Merely making a copy of, as opposed to deleting, electronically stored information does not support a conversion claim because the owner is not deprived of possession or use of the information." *New Friendship Used Clothing Collection, LLC*, 2017 NCBC LEXIS 72, at \*38–39.

28.     The Court finds that Encompass has failed to sufficiently plead a claim for conversion against Hilsman. In its Verified Complaint, Encompass alleges that on several occasions, Hilsman accessed Encompass's database and downloaded its electronically stored property without Encompass's consent. (ECF No. 3, at ¶¶ 22–42.) However, the Verified Complaint is devoid of any allegation that it has been deprived of, or excluded from, its electronically stored property. "[R]etention by a wrongdoer of an electronic copy in a manner that does not deprive the original owner of access to the same electronic data cannot constitute conversion under current North Carolina law." *Duo-Fast Carolinas, Inc.,* 2018 NCBC LEXIS 2, at \*36. Therefore, Hilsman's motion to dismiss Encompass's claim for conversion should be GRANTED.

### C. Misappropriation of trade secrets

29. In its second claim, Encompass makes a claim against Defendants for misappropriation of trade secrets in violation of the TSPA. (ECF No. 3, at ¶¶ 45–49.) Encompass alleges that its "confidential information . . . constitutes trade secrets . . . is business or technical information . . . that derives independent . . . value from not being generally known or readily ascertainable through independent development[.]" (*Id.* at ¶ 46.)

30. Hilsman's sole argument for dismissal of Encompass's claim for misappropriation is that Encompass fails to identify any trade secret with sufficient particularity to survive dismissal at the pleadings stage. (ECF No. 39, at pp. 5–8.) Essentially, Hilsman argues that Encompass's descriptions of its alleged trade secrets are vague, general, and insufficient to put Defendants on notice of what exactly has been misappropriated. (ECF No. 39, at p. 8.)

31. In North Carolina, "[t]o successfully plead a claim for misappropriation of trade secrets, a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court can determine whether misappropriation has or is threatened to occur." *Krawiec v. Manly,* 370 N.C. 602, 609, 811 S.E.2d 542, 547–48 (2018) (quoting *Washburn v. Yadkin Valley Bank & Tr. Co.,* 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008)) (internal quotations omitted). At the pleadings stage, claimants must do more than make "general allegations in sweeping and conclusory statements, without

specifically identifying the trade secrets allegedly misappropriated." *Washburn,* 190 N.C. App at 327, 660 S.E.2d at 585.

32. In *Krawiec,* the Supreme Court affirmed the dismissal of a complaint that described the plaintiff's trade secrets as "original ideas and concepts for dance productions, marketing strategies and tactics, as well as student, client and customer lists and their contact information." 370 N.C. at 611, 811 S.E.2d at 549. In reaching its conclusion, the Court noted that "[p]laintiffs provided no further detail about these ideas, concepts, strategies, and tactics sufficient to put defendants on notice as to the precise information allegedly misappropriated." *Id.*

33. In this case, Encompass's descriptions of its alleged trade secrets are more than sufficient to survive dismissal at the pleadings stage. First, in addition to its more general allegations, Encompass also identifies specific information Hilsman misappropriated including "rate tables," "design files," and "a plat template, multiple deed plat tracking spreadsheets, survey plats, and project progress information." (ECF No. 3, at ¶¶ 25–26.) These descriptions are more precise than those found deficient in *Krawiec* and *Washburn.*

34. Second, Encompass identifies specific documents and information Hilsman accessed related to particular projects on which Encompass was bidding, including the names of two specific files that Hilsman accessed regarding the Duke RLNG Project. (*Id.* at ¶ 38.)

35.     Finally, Encompass attached to the Verified Complaint a detailed list generated by CMIT of the specific files and documents Hilsman accessed and downloaded from the Server with the dates and times of such access.

36.     The Court finds that Encompass pleaded enough to put Defendants on notice of the trade secrets they are accused of misappropriating. Therefore, Hilsman's motion to dismiss Encompass's claim for misappropriation of trade secrets is DENIED.

### D. Computer Trespass

37.     In its fourth claim, Encompass alleges that Defendants are civilly liable for computer trespass in violation of N.C.G.S. § 14-458. (*Id.* at ¶¶ 56–59.) Encompass alleges that Defendants "used Encompass's computer or computer network without authority . . . to remove computer data . . . and made or caused to be made an unauthorized copy of Encompass'[s] computer data." (*Id.* at ¶ 57.) Encompass further alleges that in accessing and downloading documents from the Server beginning on and after August 17, 2018, "Defendants had no right or permission from Encompass to use its computer or computer network . . . in a manner exceeding any right or permission." (*Id.* at ¶ 58.)

38.     Section 14-458 provides, in relevant part, that "it shall be unlawful for any person to use a computer or computer network without authority and with the intent to do any of the following":

> (1)     Temporarily or permanently remove, halt, or otherwise disable any computer data, computer programs, or computer software from a computer or computer network.

> (5) Make or cause to be made an unauthorized copy, in any form, including, but not limited to, any printed or electronic form of computer data, computer programs, or computer software residing in, communicated by, or produced by a computer or computer network. . . .

N.C.G.S. § 14-458(a)(1), (5).

39.     Section 14-458(a) further provides:

> a person is 'without authority' when (i) the person has no right or permission of the owner to use a computer, or the person uses a computer in a manner exceeding the right or permission, or (ii) the person uses a computer or computer network, or the computer services of an electronic mail service provider to transmit unsolicited bulk commercial electronic mail in contravention of the authority granted by or in violation of the policies set by the electronic mail service provider.

N.C.G.S. § 14-458(a).

40.     Moreover, "[a]ny person whose property or person is injured by reason of a [computer trespass] may sue for and recover any damages sustained and the costs of the suit pursuant to G.S. 1-539.2A." N.C.G.S. § 14-458(c). The statute defines property as "financial instruments, information, including electronically processed or produced data, and computer software and computer programs in either machine or human readable form, and any other tangible or intangible item of value." N.C.G.S. § 14-453(8).

41.     Hilsman argues that Encompass's computer trespass claim should be dismissed for two reasons. First, Hilsman contends that Encompass alleges only that Hilsman accessed its computer network without authorization, and not that Hilsman

used or accessed *an Encompass computer* without authorization.[3]  (ECF No. 39, at pp. 9, 12.)  Defendants contend that Section 14-458(a), by its express terms, "does not extend its definition of 'without authority' to one who accesses a 'computer network'" without authority.  (*Id.* at p. 12.)  Consequently, if Hilsman accessed Encompass's computer network using his personal computer and not an Encompass-owned computer, his actions could not have been "without authority" and Encompass is unable to meet a fundamental element of its claim for computer trespass. (*Id.*)

42.     Alternatively, Hilsman argues that assuming accessing a computer network falls within the definition of "without authority," Encompass's claim still fails.  (*Id.* at pp. 8–11.)  Hilsman contends that he always acted with the authority of Encompass because Hilsman's account log-in "expressly granted permission to access the server" and his account was not terminated when he resigned from Encompass because CMIT failed to revoke his access.  (*Id.* at p. 9.)

43.     The Court has researched the issue but found no North Carolina appellate precedent analyzing claims for civil computer trespass, let alone providing guidance on how such claims should be viewed on a motion to dismiss.  However, the Court is persuaded that Encompass has sufficiently stated a claim for computer trespass at this preliminary stage of the case.  While it is not clear from the allegations whether Hilsman used an Encompass computer to download some or all of the information,  Encompass alleges that Hilsman "used Encompass's computer or

---

[3] Although not expressly alleged in the Verified Complaint, Defendants apparently contend that Hilsman returned his company-issued laptop computer to Encompass when he was terminated and could only have accessed the Server through devices not owned or controlled by Encompass.

computer network without authority," or exceeding his authority, when he accessed the Server and downloaded the confidential information at issue. (ECF No. 3, at ¶¶ 57–58.)

44. In addition, there are no express allegations in the Verified Complaint regarding what, if anything, Encompass told Hilsman about his access to the Server when he was terminated. The question of Hilsman's authority to access Encompass's systems is one that may require discovery to resolve.

45. North Carolina's "system of notice pleading affords a sufficiently liberal construction of complaints so that few fail to survive a motion to dismiss." *Wray v. City of Greensboro*, 370 N.C. 41, 46, 802 S.E.2d 894, 898 (2017) (quoting *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481, 334 S.E.2d 751, 755 (1985)). Encompass's allegations of computer trespass put Hilsman on "notice of the claim asserted," allow him to understand the nature of Encompass's claim, and enable Hilsman to "answer and prepare for trial." *Wake County, L.P.*, 235 N.C. App. at 646, 762 S.E.2d at 486; *County of Wayne Constr. Managers of Goldsboro v. Amory*, 2019 NCBC LEXIS 32, at *51–52 (N.C. Super. Ct. May 17, 2019) (concluding that allegations that defendant "download[ed] . . . computer data from the Box Account to his personal device(s) exceed[ing] the right or permission granted to him by plaintiffs and result[ing] in damage" are sufficient to state claim for computer trespass); s*ee also Spirax Sarco, Inc. v. SSI Eng'g, Inc.*, 122 F. Supp. 3d 408, 417–18 (E.D.N.C. Aug. 10, 2015) (stating that plaintiff companies' allegations that "[the defendant] intentionally used his [company-issued] laptop to download vast quantities of computer files to his own

media devices and Dropbox account, without authorization and . . . deleted vast quantities of computer files from his [company-issued] laptop without authorization" were "sufficient to state a claim [for computer trespass] under North Carolina law"). Therefore, Hilsman's Motion seeking dismissal of Encompass's computer trespass claim should be DENIED.

THEREFORE, it is ORDERED that:

1.    Hilsman's Motion is GRANTED, in part, and DENIED, in part. To the extent Hilsman seeks dismissal of Encompass's claim for conversion, the motion is GRANTED. To the extent Hilsman seeks dismissal of Encompass's claims for misappropriation of trade secrets and for computer trespass, the motion is DENIED.

2.    Maser's Motion is DENIED.

SO ORDERED, this the 5th day of November, 2019.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases