McKnight v. Wakefield Missionary Baptist Church, Inc., 2022 NCBC 10.

STATE OF NORTH CAROLINA

WAKE COUNTY

CHARLOTTE MCKNIGHT and
AUDREY FOSTER, in their official
capacities as Trustees for and on
behalf of WAKEFIELD
MISSIONARY BAPTIST CHURCH,
AN UNINCORPORATED
ASSOCIATION,

          Plaintiffs,

v.

WAKEFIELD MISSIONARY
BAPTIST CHURCH, INC.;
BARBARA WILLIAMS; APRIL
HIGH; ALTON HIGH; EKERE
ETIM; ROSALIND ETIM;
HOUSTON HINSON; NATALIE
HARRIS; and DARRYL HIGH,

          Defendants.

WAKEFIELD MISSIONARY
BAPTIST CHURCH, INC.,

          Counterclaim
          Plaintiff,

v.

CHARLOTTE MCKNIGHT;
AUDREY FOSTER; LEROY
JEFFREYS; and JULIUS
MONTAGUE, in their official
capacities as Trustees and/or Officers
for and on behalf of WAKEFIELD
MISSIONARY BAPTIST CHURCH,
AN UNINCORPORATED
ASSOCIATION,

          Counterclaim
          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 8299


**ORDER AND OPINION ON MOTIONS
FOR SUMMARY JUDGMENT**

1. This case arises out of a dispute between two factions of the congregation of Wakefield Missionary Baptist Church. Pending are the parties' cross-motions for summary judgment.

> *Michael A. Jones & Associates, P.L.L.C., by Michael A. Jones, for Plaintiffs/Counterclaim Defendants Charlotte McKnight and Audrey Foster and for Counterclaim Defendants Leroy Jeffreys and Julius Montague.*

> *Kitchen & Turrentine, PLLC, by S.C. Kitchen, for Defendant/Counterclaim Plaintiff Wakefield Missionary Baptist Church, Inc. and for Defendants Barbara Williams, April High, Alton High, Ekere Etim, Rosalind Etim, Houston Hinson, Natalie Harris, and Darryl High.*

Conrad, Judge.

## I.
## BACKGROUND

2. The Court does not make findings of fact when deciding motions for summary judgment. This background describes the evidence, noting relevant disputes, to provide context for the Court's analysis and ruling.

3. Wakefield Missionary Baptist Church ("Wakefield") was formed as an unincorporated association over 150 years ago. It is a congregational church, meaning that it is self-governing and not controlled by any higher ecclesiastical body. Since 2016, Wakefield has had a written constitution and bylaws[1] with provisions that vest its members with all governing authority and that direct its board of trustees to hold church property in trust and to supervise the collection and

---

[1] There are two versions of the constitution and bylaws in the record. (*See* ECF Nos. 33.1, 67.1.) Although the parties dispute which is the correct version, that dispute is immaterial because the relevant parts of each are identical.

disbursement of church funds. (*See generally* Aff. A. High Ex. 1, ECF No. 67.1 ["Bylaws"].)

4. Plaintiffs Charlotte McKnight and Audrey Foster are church members and claim to be trustees as well. They have sued eight other trustees ("Trustee Defendants") for allegedly taking actions that were either without the congregation's approval or contrary to its will, thus violating Wakefield's bylaws.

5. The troubles began in mid-2019 after a controversial membership meeting to elect signatories for Wakefield's bank account. Senior pastor Cory Benson moderated the meeting and named McKnight, Foster, and Leroy Jeffreys as the winners of the election. (*See* Aff. A. High Ex. 2, ECF No. 67.2.) The Trustee Defendants rejected the result, protesting what they viewed as irregularities in how the meeting and vote were conducted. (*See* Aff. A. High ¶ 5, ECF No. 67.) Caught in the middle, the bank froze the church's account and filed an interpleader suit—a suit that remains pending in Wake County Superior Court. *See generally United Cmty. Bank v. Wakefield Missionary Baptist Church*, 2021-NCCOA-89, 855 S.E.2d 300 (unpublished).

6. More controversy followed in the wake of the bank's actions. The Trustee Defendants terminated Benson's employment contract, accusing him of meddling in church finances and other malfeasance. (*See* Hr'g Tr. 72, ECF No. 66.1.[2]) They also locked the church building and notified members that, "until the church's funds are

---

[2] This document is a transcript of an evidentiary hearing in a third litigation between these parties. *See Wakefield Missionary Baptist Church, Inc. v. Benson*, No. 19-CVS-13269 (Wake Cnty.).

released, regular services will not be held." (Notice Dated 10 Aug. 2019, ECF No. 33.3.) This prompted Benson and a dozen or so members—including McKnight and Foster—to begin holding weekly worship services at an off-site location. (*See* Foster Resp. to Interrogs. 4–5, ECF No. 66.4; *see also* Hr'g Tr. 10.)

7. Over the next few months, the Trustee Defendants took steps to reorganize Wakefield as a corporation called Wakefield Missionary Baptist Church, Inc. ("WMBC, Inc."). Among other things, they approved a plan of conversion, filed articles of incorporation, adopted new bylaws, and obtained a new employer identification number for tax purposes. (*See* Aff. A. High Ex. 3, ECF No. 67.3.) When the Trustee Defendants reopened the church for worship after the new year, they put these actions to the congregation for a vote. At a business meeting in February 2020, all thirty-seven members in attendance voted to ratify the corporate conversion and to transfer Wakefield's property to WMBC, Inc. At the same time, the members in attendance also unanimously ratified the termination of Benson's contract. (*See* Church Resolution, ECF No. 33.8; *see also* Hr'g Tr. 116, 118.)

8. This litigation began when McKnight and Foster filed suit on behalf of the unincorporated association to recover damages and to unwind the transfer of its property to WMBC, Inc.[3] McKnight and Foster dispute the legitimacy of the February 2020 ratification vote and assert that the Trustee Defendants overstepped their authority by rejecting the elected slate of bank-account signatories, closing the

---

[3] McKnight and Foster also oppose the termination of Benson's employment contract as senior pastor. In an earlier decision, the Court held that they lack standing to pursue relief related to his dismissal.

church building, and reorganizing Wakefield as a corporation. The amended complaint includes claims against the Trustee Defendants for breach of fiduciary duty and constructive fraud and a claim against WMBC, Inc. for unjust enrichment.

9. In response, the Trustee Defendants and WMBC, Inc. assert that the congregation ratified their actions and, thus, that the unincorporated association no longer exists. WMBC, Inc. has also brought counterclaims against McKnight, Foster, and two others, alleging that they have used the name "Wakefield Missionary Baptist Church" without permission to open a new bank account, advertise their services on the internet, and make contracts with third parties. These allegations are the basis for counterclaims for trade name infringement, conversion, and civil conspiracy.

10. Three motions for summary judgment are pending: one by McKnight and Foster; another by McKnight, Foster, and their fellow counterclaim defendants; and a third by the Trustee Defendants and WMBC, Inc. (*See* ECF Nos. 66, 69, 71.) Together, the three motions cover all pending claims. After full briefing and a hearing on 28 October 2021, the motions are ripe.

II.
ANALYSIS

11. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all inferences in its favor. *See Vizant Techs., LLC v. YRC Worldwide,*

*Inc.*, 373 N.C. 549, 556 (2020); *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182 (2011).

12. "When the party with the burden of proof moves for summary judgment, a greater burden must be met." *Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 578 (1985). The moving party "must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721 (1985); *see also Kidd v. Early*, 289 N.C. 343, 370 (1976). For that reason, "rarely is it proper to enter summary judgment in favor of the party having the burden of proof." *Blackwell v. Massey*, 69 N.C. App. 240, 243 (1984).

## A. Claims by McKnight and Foster

13. The Court begins with the claims asserted by McKnight and Foster (breach of fiduciary duty, constructive fraud, and unjust enrichment). Each side has moved for summary judgment.

14. All three claims raise a common question: who is the rightful owner of Wakefield's property? The unincorporated association is, according to McKnight and Foster. In their view, the Trustee Defendants usurped the authority of the congregation by claiming control of Wakefield's grounds and bank account, taking steps to reorganize the church as a corporation, and then transferring its property to WMBC, Inc. The Trustee Defendants and WMBC, Inc. respond that the congregation ratified the corporate conversion and authorized the property transfer. These votes,

they contend, not only confirm WMBC, Inc.'s title to church property but also extinguish all claims by McKnight and Foster.

15. This inquiry implicates the First Amendment, which "severely circumscribes the role that civil courts may play in resolving church property disputes." *Harris v. Matthews*, 361 N.C. 265, 271 (2007) (quoting *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969)). Under no circumstances may a civil court "resolve ecclesiastical questions" or decide "controversies over religious doctrine and practice." *Id.* (quoting *Presbyterian Church in the U.S.*, 393 U.S. at 449). Rather, "court review should be limited to questions that can be resolved on the basis of neutral principles of law such as (1) who constitutes the governing body of this particular church, and (2) who has that governing body determined to be entitled to use the properties." *Id.* at 272 (cleaned up).

16. On these narrow questions, the evidence is undisputed and favors the Trustee Defendants and WMBC, Inc. Wakefield's governing body is its congregation. (*See* Bylaws Art. III, § 1.) In February 2020, members of the congregation met to decide whether to ratify the actions of the Trustee Defendants—specifically including the incorporation of the church—and to authorize the transfer of church property to WMBC, Inc. Attending members unanimously voted yes. (*See* Church Resolution.)

17. McKnight and Foster offer no contrary evidence and no constitutionally permissible reason to upset the congregation's decisions. They assert, without citation, that the ratification meeting lacked proper notice and that they were

prevented from attending and voting. But the evidence shows that the meeting was properly called and conducted. (*See* Hr'g Tr. 116; Church Resolution; *see also* Bylaws Art. X § 2 ("Notice of [a business] meeting and the purpose for which it is called shall be given on the Sunday preceding the date of the meeting.").) McKnight and Foster also assert that all thirty-seven individuals who voted for ratification had ceased to be church members. Again, the undisputed evidence contradicts that assertion and shows no change in Wakefield's membership.[4] (*See* Hr'g Tr. 160 ("The Court: How have they lost membership? Have people resigned their membership? The Witness: No, they are just not attending.").)

18.  Throughout their briefs, McKnight and Foster urge the Court to look past the congregation's ratification of the Trustee Defendants' actions and instead consider whether those actions were valid at the time they were made. To do so would be error. Wakefield's "congregation has the right to control the church," including the right to forgive or to endorse actions previously taken by church leaders. *Graham v. Lockhart*, 42 N.C. App. 377, 379 (1979) (observing that congregation had the power to change customs and to approve or overturn earlier decisions). Put simply, the congregation, as the governing body, has had its referendum on these disputes and has "declared the matter closed." *Harris*, 361 N.C. at 273–74 (deferring to decision of internal governing body in dispute about use of church funds).

---

[4] Perhaps McKnight and Foster believe that those who voted for ratification forfeited their membership by supporting the Trustee Defendants. If so, entertaining that argument would undoubtedly run afoul of the First Amendment. The Court has no business rendering a decision that would, in effect, excommunicate church members for siding with one faction over another in matters of church governance.

19.     Moreover, peeking behind the ratification vote would lead to a dead end. The parties dispute, for example, the validity of the voting procedures used during the mid-2019 meeting to elect bank-account signatories. But even McKnight and Foster see that as an ecclesiastical question that the Court cannot answer.[5] The parties also dispute whether the Trustee Defendants' reasons for closing the church building and suspending worship services were pretextual. That, too, is off limits because it cannot be resolved based on neutral principles: the bylaws supply no ready answer, and the Court would therefore have "to interpose its judgment as to both the proper role of these church officials and whether" closure of the church building "was proper in light of [Wakefield's] religious doctrine and practice." *Harris*, 361 N.C. at 273 (declining to address claim that church officials "breached their fiduciary duties by improperly using church funds"); *see also Davis v. New Zion Baptist Church*, 258 N.C. App. 223, 227 (2018) (declining to address matters not specified in church bylaws); *Davis v. Williams*, 242 N.C. App. 262, 266 (2015) (same).

20.     In sum, the Court must limit its review to issues that can be resolved based on neutral principles. Here, the undisputed evidence shows that Wakefield's congregation ratified the corporate conversion and approved the transfer of property to the newly incorporated WMBC, Inc. Neither the Court nor a jury can overrule the congregation's edict. The Court therefore enters summary judgment in favor of the Trustee Defendants and WMBC, Inc. as to the claims for breach of fiduciary duty,

---

[5] (*See* ECF No. 78 at 12 (stating "that inquiries into how the disputing Church factions interpret and apply Roberts Rules of Order [at] their meetings runs the risk of ecclesiastical entanglement concerning Church governance and customary practices").)

constructive fraud, and unjust enrichment.  *See, e.g.*, *Atkins v. Walker*, 284 N.C. 306, 321 (1973) (concluding that vote "taken at a meeting of the congregation duly called, convened and conducted according to the properly established procedures of the church then in effect" was controlling); *Graham*, 42 N.C. App. at 379 (affirming summary judgment based on decision of congregation when undisputed evidence showed "that the meetings were properly called and properly conducted").

## B.  Counterclaims by WMBC, Inc.

52.    WMBC, Inc. has asserted three counterclaims (conversion, conspiracy, and trade name infringement).  Again, each side has moved for summary judgment.

53.    **Conversion and Conspiracy**.  The claims for conversion and conspiracy relate to donations that McKnight, Foster, and others have collected from worshipers online and at off-site religious services.  WMBC, Inc. contends that it is entitled to these amounts because they were collected by a dissident faction in the name of the church but without permission.

54.    Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439 (1956) (citation and quotation marks omitted).  "[T]he general rule is that money may be the subject of an action for conversion *only* when it is capable of being identified and described." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 528 (2012) (citation and quotation marks omitted).  Thus,

to maintain a claim of conversion, WMBC, Inc. must identify and describe the funds at issue and also "establish that it retained ownership" of them.  *Id.* at 523.

55.    WMBC, Inc. has not presented enough evidence to create a genuine issue of material fact.  Its "conversion claim is not one for a specific amount" given by one or more individuals but instead "for a category of monies" (all donations collected by the opposing faction).  *Wake Cnty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 653 (2014).  The donations came from unknown sources, at unknown times, and in unknown amounts.  At no point did WMBC, Inc. have possession of all or part of the donations.  Nor has WMBC, Inc. offered any evidence to show that donors intended their money to go to it rather than to the faction led by McKnight and Foster.  In addition, WMBC, Inc. did not then and does not now control the bank account in which the donations were deposited; McKnight and Foster created that account after the church split.  (*See* Foster Resp. to Interrogs. 2.)  From this evidence, no reasonable jury could conclude that the funds in question are capable of being identified and described with specificity or that they were owned by WMBC, Inc.  *See Hotels.com* 235 N.C. App. at 653 (affirming entry of summary judgment and dismissal of conversion claim on similar grounds); *see also Variety Wholesalers*, 365 N.C. at 529 (holding that claim for conversion of money requires "evidence of the specific source, specific amount, and specific destination of the funds in question").

56.    The Court therefore grants summary judgment in favor of McKnight, Foster, and the other counterclaim defendants as to WMBC Inc.'s claim for conversion.  Because there can be no conspiracy to commit conversion without an

underlying claim for conversion, the Court also grants summary judgment as to the claim for civil conspiracy. *See, e.g.*, *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747 (2007).

57. **Trade Name Infringement**. This claim concerns the use of the name Wakefield Missionary Baptist Church. It is undisputed that the church has used this name without interruption since at least the 1990s. WMBC, Inc. contends that, as the successor to the unincorporated association, it has the right to keep a dissident faction from using the name. McKnight, Foster, and the other counterclaim defendants contend that the church's name is generic and therefore not protectable as a trade name.

58. Few North Carolina cases address the trademark and trade name rights of churches. Although there is little doubt that a religious body may claim such rights, just as private businesses do, it is unclear how far a civil court may go in adjudicating the use of similar or identical names by two unaffiliated churches. What a church or other house of worship chooses to call itself is, after all, an expression of its religious identity. Perhaps for that reason, our Supreme Court has left open the question "whether an injunction may be issued to forbid one church to use a name similar to that of another church." *Bd. of Provincial Elders v. Jones*, 273 N.C. 174, 184 (1968).

59. On the other hand, though few in number, the cases in this area do offer clear guidance when dealing with factional disputes within a church. Our Court of Appeals has stressed that "[t]he right to use the name inheres in the institution, not in its members; and, when they cease to be members of the institution, use by them

of the name is misleading and, if injurious to the institution, should be enjoined." *Daniel v. Wray*, 158 N.C. App. 161, 173 (2003) (quoting *Purcell v. Summers*, 145 F.2d 979, 987 (4th Cir. 1944)). "No question of religious liberty is involved" because dissident members "have no right . . . to make use of a name which will enable them to appropriate the good will which has been built up by an organization with which they are no longer connected." *Id.* (quoting *Purcell*, 145 F.2d at 987). This is the prevailing view around the country. *See Christian Sci. Bd. of Dirs. of the First Church of Christ v. Evans*, 105 N.J. 297, 315 (1987) (collecting cases "in which dissident church groups were enjoined from using identical or near-identical names as those they held when formerly affiliated with their adversaries").

60.     *Daniel*'s holding governs here; indeed, the issues in that case and this one are virtually identical. The right to use the name Wakefield Missionary Baptist Church inheres in WMBC, Inc., which is the lawful successor to the unincorporated association for the reasons discussed above. (*See* Church Resolution.) Yet McKnight, Foster, and the other estranged members in their faction have continued to use the church's name—to advertise online, to collect donations, and to make contracts with third parties—while choosing to worship apart from the rest of Wakefield's congregation. (*See, e.g.*, Foster Resp. to Interrogs. 4–5.) It follows that WMBC, Inc. is entitled to summary judgment and an appropriately tailored injunction. The dissenters are not "allowed to confuse the public or appropriate the standing and good will of this still existing" church by holding their own services under "the same name." *Daniel*, 158 N.C. App. at 174 (affirming entry of summary judgment and injunction).

The Court will therefore direct the parties to confer regarding the form of an injunction, to submit a jointly proposed order if they reach an agreement, and to brief any disagreements if not.

61. All that remains for trial is WMBC, Inc.'s demand for damages. Two threshold matters must be addressed before a damages trial, however. The first is N.C.G.S. § 61-1(b), which immunizes church officials from individual liability for monetary damages in certain circumstances. *See Daniel*, 158 N.C. App. at 174–75 (reversing award of damages under section 61-1(b)). The second, more fundamental issue is potential encroachment on religious freedom. WMBC, Inc. does not sell goods or services; it has no lost profits. Its damages case instead consists of tithes and offerings that dissenting members gave to an opposition faction of the church. A judgment that, in effect, awards to one religious body funds that worshipers gave to another would surely raise grave constitutional questions.

62. Efficiency demands that these issues should be aired and resolved, as far as possible, before the parties incur the time and expense of trial. The Court will therefore set a briefing schedule. In addition, the Court defers consideration of the parties' arguments concerning punitive damages and will address them in connection with these other damages-related issues. *See* N.C.G.S. § 1D-15(a) ("Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages . . . .").

### III.
### CONCLUSION

63.     For all these reasons, the Court **GRANTS** summary judgment in favor of the Trustee Defendants and WMBC, Inc. as to the claims for breach of fiduciary duty, constructive fraud, and unjust enrichment asserted against them. These claims are **DISMISSED** with prejudice.

64.     In addition, the Court **GRANTS** summary judgment in favor of WMBC, Inc. as to its counterclaim for trade name infringement, limited to the issue of liability. The Court **DEFERS** consideration of remedies, including the form of an appropriate injunction and the parties' arguments regarding WMBC, Inc.'s demand for punitive damages.

65.     The Court also **GRANTS** summary judgment in favor of McKnight, Foster, and their fellow counterclaim defendants as to the counterclaims for conversion and conspiracy against them. These counterclaims are **DISMISSED** with prejudice.

66.     In all other respects, the Court **DENIES** the motions.

67.     No later than 4 March 2022, the parties shall meet and confer to discuss the form of a permanent injunction against further trade name infringement. No later than 11 March 2022, the parties shall jointly tender either a proposed order containing agreed language or a proposed schedule for briefing disputes concerning the scope of an injunction. In addition, no later than 11 March 2022, the parties shall jointly tender a proposed briefing schedule to address outstanding issues relating to WMBC, Inc.'s demand for compensatory damages, including immunity under section 61-1(b) and constitutional limitations.

**SO ORDERED**, this the 18th day of February, 2022.

                   /s/ Adam M. Conrad
                  Adam M. Conrad
                  Special Superior Court Judge
                    for Complex Business Cases