Evergreen Builder Sols., LLC v. Taylor, 2025 NCBC 77.

STATE OF NORTH CAROLINA

NEW HANOVER COUNTY

EVERGREEN BUILDER
SOLUTIONS, LLC, d/b/a
EVERGREEN FOAM &
INSULATION, a North Carolina
limited liability company,

Plaintiff,

v.

WESTON DEAN TAYLOR, an
individual; MARK ERIC PRICE, an
individual; REED CAMPBELL
WESTRA, an individual; ASHLEY
FIALA WESTRA, an individual;
INTEGRITY BUILDING
COMPANIES, LLC, d/b/a IBC
ROOFING, a North Carolina limited
liability company; INTEGRITY
INSULATION SYSTEMS, LLC, a
North Carolina limited liability
company; IBC HOLDINGS, LLC, a
North Carolina limited liability
company; and IBC FRANCHISING,
LLC, a North Carolina limited
liability company,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV003575-640

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO
DISMISS**

1. This matter is before the Court on the Rule 12(b)(6) motions to dismiss filed by defendants Weston Dean Taylor and Mark Eric Price, (ECF No. 44), and defendants Reed Campbell Westra, Ashley Fiala Westra, Integrity Building Companies, LLC d/b/a IBC Roofing, Integrity Insulation Systems, LLC, IBC

Holdings, LLC, and IBC Franchising, LLC (collectively, the "**Integrity Defendants**"), (ECF No. 47).

2.      Having considered the complaint, the motions, and the written arguments of counsel, the Court hereby **GRANTS** the Integrity Defendants' motion and **GRANTS IN PART** and **DENIES IN PART** Taylor's and Price's motion as set forth below.

> *The Law Office of Matthew I. Van Horn, PLLC, by Matthew I. Van Horn, for Plaintiff Evergreen Builder Solutions, LLC d/b/a Evergreen Foam & Insulation.*
>
> *Cranfill Sumner, LLP, by Benton L. Toups and Tammy L. Neil, for Defendants Weston Dean Taylor and Mark Eric Price.*
>
> *Equitas Law Partners, LLP, by C. Wes C. Hodges, II, Thomas S. Babel, and Lieth O. Khatib, for Defendants Reed Campbell Westra, Ashley Fiala Westra, Integrity Building Companies, LLC d/b/a IBC Roofing, Integrity Insulation Systems, LLC, IBC Holdings, LLC, and IBC Franchising, LLC.*

Houston, Judge.

## I.      BACKGROUND

3.      The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. Instead, for background, the Court summarizes the complaint's factual allegations that are most relevant to the Court's decision and accepts the factual, non-conclusory allegations as true for purposes of this Order and Opinion.[1]

---

[1] In several instances, Evergreen references or even expressly incorporates various documents that it fails to attach to the complaint. These include the agreements at the heart of this dispute. (*E.g.*, ECF No. 3, ¶¶ 27, 29–31). Regardless, the documents are in the record as part of other filings by the parties and therefore are appropriately considered in resolving the motions to dismiss. (*E.g.*, ECF No. 25.1; *see also Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (noting that it is appropriate to consider documents referenced in, or

4.      Evergreen is a spray foam and thermal insulation contractor with operations or business locations in Raleigh and Wilmington, North Carolina. (ECF No. 3, ¶¶ 1, 19–20, 96).

5.      Defendants Taylor (hired in 2016) and Price (hired in 2023) are Evergreen's former employees who were based and worked in Wilmington, North Carolina. (ECF No. 3, ¶¶ 23–24, 34, 36, 40–43).

6.      As Evergreen's employees, Price and Taylor signed various contracts agreeing, in relevant part, not to disclose to third parties Evergreen's purportedly confidential or proprietary information (such as client details, pricing information, and bidding processes and formulas) and agreed not to "compete" with Evergreen either "directly or indirectly" for a period of at least three years after their employment with Evergreen. (ECF No. 3, ¶¶ 25–33, 40–44; ECF No. 25.1, Ex. A at 2; ECF No. 25.1, Ex. B at 13–14; ECF No. 25.1, Exs. C, D, and E, at 2; ECF No. 25.1, Ex. F at 2–3).

7.      Further, without a limitation as to time, Taylor agreed not to solicit (or disparage) Evergreen or any of Evergreen's "members, managers, employees, clients, vendors, supplier, operations or affiliated companies." (ECF No. 25.1, Ex. E at 2).

8.      Price similarly agreed "not to solicit, work for, attempt to hire or hire any managers, employees or clients of Evergreen subsequent to [Price's] working with Evergreen without the prior written consent of Evergreen," with this provision covering a period of at least three (3) years after cessation of Price's employment, the

---

incorporated into, the complaint, regardless of the party providing the documents); *Packard v. Sei Priv. Trust Co.*, 2025 NCBC LEXIS 69, at *7–8 (N.C. Super. Ct. June 10, 2025)).

services and products that Evergreen offers or might offer,[2] and "any location within 150 miles of a Company [i.e., Evergreen] location." (ECF No. 3, ¶ 42; ECF No. 25.1, Ex. F at 2–3). Neither Taylor's nor Price's agreements define "clients" of Evergreen, nor do they limit the non-solicitation provisions to client contacts made during the period of Taylor's or Price's employment, respectively, or with whom Price and Taylor even had a relationship while employed with Evergreen. (ECF No. 3, ¶¶ 33, 42; *see generally* ECF No. 25.1, Exs. E and F).

9.      Evergreen and Price agreed that Price's "non-compete, non-solicitation and non-hire provisions" would be governed by the geographical limitation of "any location within 150 miles of a Company location," (ECF No. 25.1, Ex. F at 3; ECF No. 3, ¶ 42), while Taylor agreed at various times not to compete with Evergreen "either directly or indirectly" within "a 350-mile radius of Raleigh, NC," (ECF No. 25.1, Ex. D at 2), "within a 250 mile radius of an operating or sales location of" Evergreen's business, (ECF No. 25.1, Ex. C at 2), or "within a 150-mile radius of a Company operating location," (ECF No. 25.1, Ex. E at 2).

10.     As a result, even though Evergreen "operates its business in" only "two principal markets" (i.e., Raleigh and Wilmington, North Carolina), the geographic limitations imposed by the agreements reach and purportedly apply to competition

---

[2] These services broadly include "any design, bidding, consulting, installation, market development, general management, production management, financial management, sales management, client management, branch management, project management or supervision," while the products similarly broadly include "any spray foam products, thermal insulation products, unventilated crawl or attic assembly products, intumescent coating products, fluid-applied and/or solid-membrane air barrier, weathershield and/or vapor-resistant products." (*E.g.*, ECF No. 25.1, Ex. F at 2–3). These categories allegedly apply regardless of whether Price or Taylor ever worked in such areas on behalf of Evergreen.

hundreds of miles away in locations as far as Blacksburg, Charlottesville, and Virginia Beach, Virginia; Monroe, North Carolina; and Camden, South Carolina, and a multitude of cities in-between. (ECF No. 3, ¶ 96).

11. During its existence, Evergreen has developed what it purports to be a "substantial" client list; certain bidding and estimation processes, programming, and formulas; and certain operations and installation methods for insulation materials that Evergreen contends are confidential or proprietary. (ECF No. 3, ¶¶ 20–22).

12. In the course of their employment, Price and Taylor had "access to" and "knowledge of" Evergreen's client lists, sales information, corporate policies, bid calculation formulas, and other financial formulas and business details that Evergreen purports to be confidential or proprietary. (ECF No. 3, ¶¶ 37, 44). Both Price and Taylor had contact and otherwise interacted with Evergreen's clients during their work on behalf of Evergreen. (ECF No. 3, ¶¶ 38, 45).

13. In October 2023, defendants IBC Holdings and the Westras formed defendant Integrity Insulation Systems, LLC. (ECF No. 3, ¶ 49).

14. Taylor's last day of employment with Evergreen was 17 November 2023, (ECF No. 3, ¶ 54), and he promptly thereafter "joined" one or more of the Integrity Defendants, (ECF No. 3, ¶ 56).

15. Price's last day of employment with Evergreen was more than a year later, in January 2025. (ECF No. 3, ¶ 77). Price told Evergreen that he was leaving to work for a financial services company and that he would not violate his non-compete, non-disclosure, and confidentiality agreements with Evergreen, but

Evergreen asserts—upon information and belief—that Price instead began working for one or more of the Integrity Defendants and that Taylor recruited him to do so. (ECF No. 3, ¶¶ 77–83).

16. Evergreen asserts—again upon information and belief—that one or more of the Integrity Defendants hired Price and Taylor to use the information they learned during their employment with Evergreen to solicit business in the markets where Evergreen operates. (ECF No. 3, ¶¶ 85–87).

17. Since Price and Taylor left their employment with Evergreen, two of Evergreen's clients have reported to Evergreen that the collective "Defendants" in this case (unspecified individually) "have stolen, and continue to steal business related to Evergreen's Business Services in competition with Evergreen." (ECF No. 3, ¶¶ 90–91).

18. Evergreen contends that its "Business Services" consist of the vaguely described "business of selling and installing Evergreen's spray foam products, thermal insulation products, unventilated crawl assembly and unventilated attic assembly products, intumescent coating products, fluid-applied and/or solid membrane air barrier, weather-shield and/or vapor-resistant products." (ECF No. 3, ¶ 20).

19. After Price and Taylor left their employment with Evergreen and "joined" one or more of the Integrity Defendants, a certificate of compliance was submitted for a property in Onslow County, North Carolina for insulation services provided by "Integrity Building Co., OU 'Insulation,'" signed by Taylor and listing

"Accufoam OC," a foam insulation manufactured by a vendor who also sells products to Evergreen. (ECF No. 3, ¶¶ 99–104).

20.    Further, defendant Price conducted a "pre-installation, sales, and operations management" inspection or similar meeting at another property in Holly Ridge, North Carolina, within the geographic locations covered under the agreements. (ECF No. 3, ¶¶ 105–11).

21.    In early 2025, Evergreen engaged in discussions about potentially providing insulation services for several fire stations in Evergreen's market. Ultimately, unspecified "Defendants" approached the owner about contracting for the work, and, though Evergreen placed a bid, Evergreen's "understanding" is that the property owner elected to contract with "Integrity Insulation." (ECF No. 3, ¶¶ 112–17).

22.    On 2 May 2025, more than a year after Taylor left and several months after Price left their employment, Evergreen filed suit against all Defendants, asserting causes of action for (i) breach of non-compete, non-disclosure, and confidentiality agreements against Weston Dean Taylor and Mark Eric Price, (ii) computer trespass against Taylor and Price, (iii) conversion against Taylor and Price, (iv) tortious interference against Integrity Building Companies, LLC, Integrity Insulation Systems, LLC, IBC Holdings, LLC, IBC Franchising, LLC, Reed Campbell Westra, and Ashley Fiala Westra, (v) imposition of a constructive trust and appointment of a receiver, (vi) alleged violations of Chapter 75 of the North Carolina

General Statutes against all Defendants, and (vii) an award of punitive damages against all Defendants. (*See generally* ECF No. 3).[3]

23.     Evergreen's causes of action are based largely upon contentions that Price and Taylor violated their contractual obligations with Evergreen by working in the same industry and providing the same services they had provided on behalf of Evergreen; that Price and Taylor have solicited Evergreen's clients in violation of their contractual provisions; that Price and Taylor "stole" and disclosed to the Integrity Defendants information that Evergreen contends to be confidential or proprietary, such as its client list and its bid preparation formulas; and that the Integrity Defendants have facilitated and encouraged the disclosure and use of Evergreen's information. (*See generally* ECF No. 3).

24.     On 7 July 2025, the Integrity Defendants moved under Rule 12(b)(6) to dismiss Evergreen's purported causes of action for tortious interference, constructive trust, appointment of a receiver, violations of Chapter 75 of the North Carolina General Statutes, and punitive damages. (ECF No. 47). The same day, defendants Price and Taylor moved under Rule 12(b)(6) to dismiss Evergreen's causes of action for breach of non-compete, non-disclosure, and confidentiality agreements; conversion; violations of Chapter 75 of the North Carolina General Statutes;

---

[3] On 5 May 2025, Plaintiff filed a motion for temporary restraining order and preliminary injunction (ECF No. 5). On 6 May 2025, the Honorable R. Kent Harrell entered a Preliminary Restraining Order (ECF No. 7). After briefing and a hearing, this Court, on 5 June 2025, entered an Order denying Plaintiff's motion for preliminary injunction and dissolving the temporary restraining order (ECF No. 43).

constructive trust; and punitive damages. (ECF No. 44). Price and Taylor have not moved to dismiss the cause of action for computer trespass.

25. The motions are fully briefed and ripe for resolution, and the Court resolves the motions on the briefing pursuant to Rule 7.4 of the Business Court Rules, with each party having had a full opportunity to brief the motions.[4]

## II. ANALYSIS

26. When considering a Rule 12(b)(6) motion, the Court must determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation omitted).

27. The Court treats the well-pleaded factual allegations as true and views them "in the light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019) (citation omitted); *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court must determine "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory." *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus.*, 336 N.C. 438, 442 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692 (1991) (alterations in original)).

---

[4] Despite these briefing opportunities, the Court observes that the parties failed to avail themselves of the opportunity to substantively advance many of their arguments. Evergreen (in particular) and Taylor and Price (to a lesser degree) at varying points provide the written equivalent of competing Gallic shrugs, relying largely on conclusory assertions that Evergreen has, or has not, stated a claim and leaving the Court to divine the substantive basis for their respective arguments. Nonetheless, the Court has parsed the arguments and endeavors to resolve the motions based on the arguments raised, either implicitly or explicitly.

28. Further, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers" regardless of the party that presents them. *Oberlin*, 147 N.C. App. at 60 (citation omitted). The Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citations omitted).

29. Dismissal on a Rule 12(b)(6) motion is proper if "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin*, 371 N.C. at 615 (citations omitted).

30. The Court addresses the causes of action at issue in turn.

a. **Breach of Contract**

31. For its breach of contract cause of action, Evergreen asserts that defendants Taylor and Price breached and violated their respective non-compete, non-disclosure, and confidentiality agreements with Evergreen, primarily by "participat[ing] in Evergreen's Business Services since their departure," "divulg[ing] and disseminat[ing] Plaintiff Evergreen's Proprietary Information," "us[ing] their knowledge of Plaintiff Evergreen's client lists to solicit current and former clients of Evergreen," and "us[ing] their knowledge of Plaintiff Evergreen's Business Services,

bidding, and estimating programs and formulas techniques [sic] to present and circulate proposals to the Defendants' potential clients." (ECF No. 3, ¶¶ 138–56).

32. Thus, at issue are three discrete restrictions and limitations in the various agreements between the parties: non-compete, non-solicitation, and non-disclosure or confidentiality restrictions. (ECF No. 3, ¶¶ 138–56).

33. "'A party asserting breach of contract must show: (1) existence of a valid contract; and (2) breach of the terms of that contract.' The first inquiry is therefore whether the [agreement at issue]—specifically the non-competition, non-solicitation, and non-disclosure provisions—is a valid contract." *Amerigas Propane, L.P. v. Coffey*, 2015 NCBC LEXIS 98, at *10 (N.C. Super. Ct. Oct. 15, 2015) (quoting, in part, *Cater v. Barker*, 172 N.C. App. 441, 445 (2005)).

i. <u>Breach of Non-Compete and Non-Solicitation Provisions</u>

34. Taylor and Price argue that the non-competition and non-solicitation provisions at issue are fatally overbroad in terms of their geographic restrictions, client-based restrictions, and subject matter restrictions.

35. Under North Carolina law, "[c]ovenants not to compete restrain trade and are scrutinized strictly." *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 323 (2008); *Prometheus Grp. Enters., LLC v. Gibson*, 2023 NCBC LEXIS 42, at *11 (N.C. Super. Ct. Mar. 21, 2023).

36. "[F]or a non-competition agreement to be valid and enforceable it must be: (1) in writing; (2) part of an employment contract; (3) based on valuable consideration; (4) reasonable as to time and territory; and (5) designed to protect a

legitimate business interest." *Aeroflow Inc. v. Arias*, 2011 NCBC LEXIS 21, at *16 (N.C. Super. Ct. July 5, 2011) (quoting *Med. Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 655 (2009)). "Legitimate business interests include, *inter alia*, protecting the goodwill that arises from the former employee's contacts with customers and safeguarding the confidential information to which the former employee had access." *Prometheus*, 2023 NCBC LEXIS 42, at *12.

37.    "When considering the enforceability of a covenant not to compete, a court examines the reasonableness of its time and geographic restrictions, balancing the substantial right of the employee to work with that of the employer to protect its legitimate business interests." *Med. Staffing Network*, 194 N.C. App. at 655 (citation omitted).

38.    Whether a restrictive covenant is reasonable and enforceable is determined as a matter of law. *See, e.g., id.*; *Keith v. Day*, 81 N.C. App. 185, 193 (1986). Therefore, the Court analyzes the provisions "keeping in mind that the ultimate determination depends on whether each restraint is no more restrictive than necessary to protect the legitimate business interests implicated." *Digit. Realty Trust, Inc. v. Sprygada*, 2022 NCBC LEXIS 71, at *24 (N.C. Super. Ct. July 1, 2022).

39.    In evaluating geographic limitations, courts generally consider six primary factors: "(1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved;

and (6) the nature of the employee's duty and his knowledge of the employer's business operation." *Hartman v. W.H. Odell & Assocs.*, 117 N.C. App. 307, 312 (1994).

40.     In any event, "[a] restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in maintaining his customers." *Manpower of Guilford Cnty., Inc. v. Hedgecock*, 42 N.C. App. 515, 523 (1979).

41.     Similarly, a temporal restriction on competition must be reasonable in duration. *Sandhills Home Care, LLC v. Companion Home Care—Unimed, Inc.*, 2016 NCBC LEXIS 61, at *13–14, 18, 23 (N.C. Super. Ct. Aug. 1, 2006) (addressing non-solicitation clauses).

42.     Temporal and geographic restrictions in a non-compete agreement are often considered on a sliding scale, "such that '[a] longer period of time is acceptable where the geographic restriction is relatively small, and vice versa.'" *Kinesis Advert., Inc. v. Hill*, 187 N.C. App. 1, 13–14 (2007) (citation omitted); *see also Henley Paper Co. v. McAllister*, 253 N.C. 529, 535 (1960); *CopyPro, Inc. v. Musgrove*, 232 N.C. App. 194, 204 (2014).

43.     And finally, as to client-based restrictions, the scope of such a non-solicitation provision cannot "extend beyond contacts [the employee] made during the period of the employee's employment." *Farr Assocs., Inc. v. Baskin*, 138 N.C. App. 276, 282 (2000).

44.     Here, while Evergreen operates only in two locations in a single state—Raleigh and Wilmington, North Carolina—the agreements purport to restrict Price

and Taylor from competing "directly or indirectly" in any capacity with Evergreen across *at least* a one-hundred-fifty (150) mile radius spanning three separate states for a period of at least three years.[5]

45.    The provisions are so broad that they conceivably encompass any and all services and products in any way offered, and clients in any way serviced, by Evergreen at any time, regardless of whether Taylor or Price provided the products or services on behalf of Evergreen and regardless of whether Evergreen itself provided the product or service (or worked with the client) during the period of Price's or Taylor's employment.

46.    Construing the allegations of the complaint in the light most favorable to Evergreen and considering the plain language of the agreements at issue, the Court determines that the non-compete and non-solicitation provisions of the agreements at issue are overly and unenforceably broad. Therefore, to the extent based on those provisions, Evergreen's cause of action for breach of contract fails as a matter of law, such that dismissal is appropriate. *See, e.g.*, *Henley*, 253 N.C. at 535 (voiding restrictions); *CopyPro*, 232 N.C. App. at 204; *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 509 (2004) (describing the limited scope of viable non-compete agreements); *Farr*, 138 N.C. App. at 281; *Manpower*, 42 N.C. App. at 522–23 ("A restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in maintaining his customers."); *Andy-Oxy Co., Inc. v.*

---

[5] Taylor contends that the non-compete provisions in his agreements with Plaintiff ultimately subject him to a limitation that ranges between six years and indefinitely, (ECF No. 45 at 12–13), but the Court need not decide that issue, as the restriction is *at least* three years based on the plain language of the agreements at issue.

*Harris*, 268 N.C. App. 323, at *6 (2019) (unpublished) (noting that "client-based limitation cannot extend beyond contacts made during the period of the employee's employment" (citation omitted)); *Prometheus*, 2023 NCBC LEXIS 42, at *13–15 (addressing prohibitions on competition "directly or indirectly" with the plaintiff); *Sandhills*, 2016 NCBC LEXIS 61, at *13–14, 18, 23 (noting that non-solicitation clauses must be reasonable in duration); *Akzo Nobel Coatings Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *32 (N.C. Super. Ct. Nov. 3, 2011).

ii. <u>Breach of Non-Disclosure and Confidentiality Provisions</u>

47. As the Business Court has recognized, "[c]ourts do not scrutinize confidentiality clauses as heavily as restrictive covenants." *Fin. Carrier Servs. LLC v. Kingpin Cap. Inc.,* 2025 NCBC LEXIS 72, at *9 (N.C. Super. Ct. June 19, 2025).

48. In relevant part, Taylor agreed "to keep confidential, not to remove and not disclose to any third party any [property and/or information that is proprietary and confidential to Evergreen and that is owned exclusively by Evergreen] (including but not limited to anything relating to Evergreen's members, managers, employees, clients, operation, vendors, suppliers or any other related party or company) for any reason," (ECF No. 3, ¶ 25); ECF No. 25.1, Ex. A at 2), as well as not to disclose Evergreen's "Confidential Information" to any third party for any reason, with such information including:

> data relating to the Company's marketing and servicing programs, procedures and techniques; the criteria and formulae used by the Company in pricing its products and services; the structure and pricing of special arrangements that the Company has negotiated; lists of customers and prospects; the identity, authority, and responsibilities of key contacts at Company

customers; the composition and organization of customers' businesses; agreements with the Company's vendors, manufacturers and customers and documents relating thereto; sensitive details concerning the structure, conditions, and extent of the Company products and services; contract expiration dates; profit margins; analysis tools; finances; accounting; personnel compensation; employee certifications, training and approvals received from manufacturers of Company products; and other Company policies and procedures that may exist from time to time.

(ECF No. 3, ¶¶ 27–28 (addressing "Employee Manual"); ECF No. 25.1, Ex. B at 13).

49. Despite the breadth of these provisions, Price and Taylor do not contend that the non-disclosure and confidentiality obligations are unenforceable but contend that much of the information that Evergreen alleges they have disclosed in breach of those agreements—namely, the identities or contact information of Evergreen's customers—is public information. (ECF No. 45, at 2, 17–21; ECF No. 71 at 4). With no challenge as to the breadth of the provisions, the Court therefore limits its analysis accordingly.

50. In support of their argument, Price and Taylor request that the Court take judicial notice of various internet-based sources demonstrating that the identities of certain of Evergreen's purported clients are public. (ECF No. 45, at 2, 17–21; ECF No. 71 at 4). Even if the Court were to do so, however, Evergreen has at this stage sufficiently pleaded—though in heavy reliance on inferences in its favor— that Taylor and Price have used or disclosed information in violation of the non-disclosure and confidentiality provisions of their respective agreements with Evergreen. The fact that Taylor and Price might be able to demonstrate that *certain* customer identities, foam insulation "how to," or other information is publicly

available does not automatically mean that *all* such information covered under the parties' agreements is publicly available.[6]

51. As the Court recognized in *Financial Carrier Services*, "[c]laims for breach of contract are not subject to heightened pleading standards. The particularity requirement that applies to trade-secret claims does not apply here, for example." *Fin. Carrier Servs. LLC*, 2025 NCBC LEXIS 72, at *10.

52. Evergreen has alleged that Price and Taylor acquired confidential business, customer, and financial information; that they have "divulged," "disseminated," and otherwise "used" the information outside the permissible scope of their employment with Evergreen for the benefit of the Integrity Defendants; that they have done so without Evergreen's consent; and that Evergreen has been harmed—all in violation of the agreements. (*E.g.*, ECF No. 3, ¶¶ 37–39, 48, 69–71, 126, 148, 149–151); *see generally Wells Fargo Ins. Servs. U.S.A. v. Link*, 2019 N.C. LEXIS 382 (N.C. Super. Ct. May 10, 2019) (determining breach of confidentiality agreement was adequately pleaded). It has not pleaded those contentions with specificity, but it was not required to do so.

53. Taken as true within the context of the complaint, these allegations are sufficient to withstand a motion to dismiss. The Court therefore **DENIES** Taylor's and Price's motion to dismiss Evergreen's breach of contract cause of action to the

---

[6] It may well be, of course, that Defendants establish at the summary judgment stage that the information about which Plaintiff complains is in fact the same information that is public, but that is not for the Court to decide at this stage of the case.

extent it is premised upon alleged breach of the confidentiality and non-disclosure obligations of the agreements.

b. **Conversion**

54. For its fourth cause of action, Evergreen alleges that Taylor and Price have converted certain information from Evergreen, including its business trade practices, strategies, and proprietary information. (ECF No. 3 at 31–32). Specifically, Evergreen alleges that Price and Taylor had access to and knowledge of its "Proprietary Information"; that they made copies of that information, including "confidential prospective clients, accounts, client lists, price lists, corporate policies, marketing strategy, products, processes, techniques, and services"; and that they have used it without permission. (ECF No. 45 at 22 (quoting ECF No. 3, ¶¶ 37, 44, 159, 169); *see also* ECF No. 3, ¶¶ 161–70).

55. Taylor and Price argue that the claim necessarily fails because (i) they rightfully obtained the information in the course of their employment, with Evergreen having failed to plead that it has demanded its return, and (ii) Evergreen has not alleged that it was deprived of the information—simply that Taylor and Price have wrongfully taken it. (ECF No. 45 at 21–23).

56. Evergreen does not dispute either of these arguments. (*See generally* ECF No. 69). Rather, Evergreen conclusorily contends in briefing that its complaint "clearly alleges that Defendants Taylor and Price's actions were unauthorized and, that Defendants Taylor and Price exercised and continue to exercise along with the

Integrity Defendant exclusive dominion and control over Plaintiff's property." (ECF No. 69 at 11).

57. The Court disagrees with Evergreen and determines that the complaint fails to state a claim for conversion.

58. "[T]wo essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant," defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Wake Cnty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 652 (2014) (citations omitted)). "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner." *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86 (2008).

59. While Evergreen pleads facts suggesting that Price and Taylor took electronic *copies* of its client information and policies,[7] the complaint lacks any allegation that Evergreen demanded the return of the information or that Evergreen has in any way been deprived of its original information by virtue of Taylor's and Price's alleged copying or retention of the information after leaving employment with Evergreen.

60. Accordingly, the Court **GRANTS** the motion to dismiss Evergreen's cause of action for conversion, and that cause of action against Price and Taylor is **DISMISSED**.

---

[7] Indeed, Evergreen's computer trespass cause of action affirmatively alleges that the information at issue is electronic data and other intangible information.

### c. **Tortious Interference with Contract**

61. With its fifth cause of action, Evergreen asserts that the Integrity Defendants tortiously interfered with Evergreen's contracts with Taylor and Price by inducing Price and Taylor to breach their agreements with Evergreen. (ECF No. 3, ¶¶ 171–79).

62. The Integrity Defendants contend that the cause of action fails because the non-compete and non-solicitation provisions are unenforceable; Evergreen's allegations regarding the confidentiality provisions are largely conclusory or otherwise made on information and belief without supporting factual allegations; and Evergreen has failed to adequately allege that the Integrity Defendants' conduct was untaken without a legitimate business purpose. (ECF No. 48 at 7–13). The Integrity Defendants also argue that, even if Evergreen has stated a claim against defendants Integrity Building Companies, LLC d/b/a IBC Roofing and Integrity Insulation Systems, LLC, Evergreen has failed to state a claim against defendants IBC Holdings, IBC Franchising, LLC, Reed Campbell Westra, and Ashley Fiala Westra. (ECF No. 48 at 19–22).

63. In response, without substantively responding to these arguments, Evergreen unhelpfully (and incorrectly) argues that Defendants have raised issues outside the pleadings so that Evergreen's cause of action should survive until discovery and conclusorily asserts that, as long as a breach of contract cause of action against Price and Taylor survives, so too must the tortious interference cause of action. (ECF No. 70 at 8–9).

64. "The pleading standards for a tortious interference with contract claim are strict." *Charah, LLC v. Sequoia Servs., LLC*, 2020 NCBC LEXIS 52, at *13 (N.C. Super. Ct. Apr. 17, 2020) (citation omitted).

65. A plaintiff states a claim for tortious interference with contract by alleging facts sufficient to demonstrate "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *White v. Cross Sales & Eng'g Co.*, 177 N.C. App. 765, 768–69 (2006) (citation and internal punctuation omitted).

66. "A party acts 'without justification' when he acts with malice and his actions are 'not reasonably related to the protection of a legitimate business interest.' The pleading standards for a tortious interference with contract claim are strict. To sufficiently allege that a party acted without justification, the complaint must provide 'a factual basis to support the claim of malice.' A general allegation of malice is insufficient." *Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at *15–16 (N.C. Super. Ct. Feb. 8, 2017) (quoting *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605 (2007) (internal citations omitted).

67. "[E]stablishing a competing business is a legitimate business motive." *Charah*, 2020 NCBC LEXIS 52, at *16 (citing *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 371 (2001); *Salon Blu, Inc. v. Salon Lofts Grp., LLC*, 2018 NCBC LEXIS

72, at *13–14 (N.C. Super. Ct. July 16, 2018); *Daniel Grp., Inc. v. Am. Sales & Mktg.*, 2016 NCBC LEXIS 112, at *31–32 (N.C. Super. Ct. Dec. 15, 2016)).

68. As the Integrity Defendants observe, Evergreen's cause of action for tortious interference fails to the extent that it is premised upon Price's or Taylor's alleged breaches of (or failures to perform under) the non-compete and non-solicitation provisions of Price's and Taylor's agreements with Evergreen, as the Court has determined that those provisions are unenforceable. *Fin. Carrier Servs. LLC*, 2025 NCBC LEXIS 72, at *11 (concluding that alleged breaches of unenforceable non-competition and non-solicitation clauses "cannot support" a plaintiff's "claim for tortious interference with contract" (quoting *Phelps Staffing, LLC v. C.T. Phelps, Inc.*, 226 N.C. App. 506, 512 (2013), and *Design Gaps, Inc. v. Hall*, 2024 NCBC LEXIS 64, at *10 (N.C. Super. Ct. May 1, 2024))).

69. Moreover, Evergreen alleges that it "was and is a significant competitor [of the Integrity Defendants] in the Local Market for Evergreen's Business Services" and that those Defendants collaborated with Price and Taylor to "[c]ompete with Evergreen." (ECF No. 3, ¶ 52 & at 11 (heading)). Evergreen also contends the Integrity Defendants engaged in conversations with Taylor "to compete with Evergreen," (ECF No. 3, ¶ 55), and hired Price "to compete with Plaintiff Evergreen," (ECF No. 3, ¶ 82). Evergreen even collectively defines the Integrity Defendants as "the 'Competing Employers,'" (ECF No. 3, ¶ 56), and alleges that its purportedly confidential information was used "to prepare proposals *to compete with Evergreen* and solicit Evergreen's clients…" (ECF No. 3, ¶ 69). Evergreen also contends that the

ultimate purpose of the alleged collusion and purported deceptive conduct by Defendants was "to compete with Plaintiff Evergreen in the Local Market[.]" (ECF No. 3, ¶ 92; *see also* ECF No. 3, ¶ 97 (contending conduct was "in competition with Plaintiff Evergreen" and "to compete with Plaintiff Evergreen"), ¶¶ 104–05, 111–12, 118, 129, 133, 168, 196 (asserting information was used "to compete with Plaintiff Evergreen" or "to compete with Evergreen")).

70. Evergreen alleges only in conclusory fashion that the Integrity Defendants "acted with malice," (ECF No. 3, ¶ 176), and, upon information and belief, that they are "unlawfully" competing with Evergreen, (ECF No. 3, ¶¶ 76, 87).

71. Such "general allegations of malice are insufficient as a matter of pleading." *Pinewood Homes, Inc.*, 184 N.C. App. at 597; *Charah*, 2020 NCBC LEXIS 52, at *13; *see also Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *17–18 (N.C. Super. Ct. Mar. 27, 2017). Thus, the cause of action against the Integrity Defendants is appropriately dismissed on that basis.

72. Further, at a more basic level, the Court determines that Evergreen's pleadings fail to meet the notice pleading standards and requirements of Rule 8(a) and Rule 12(b)(6) by (i) lumping the Integrity Defendants (i.e., Reed Campbell, Ashley Fiala Westra, Integrity Building Companies, LLC d/b/a IBC Roofing, Integrity Insulation Systems, LLC, IBC Holdings, LLC, and IBC Franchising, LLC) into a single defined term of "Competing[8] Defendants," (ii) asserting in a conclusory fashion that the corporate defendants are alter egos of the Westras such that they are all one

---

[8] Evergreen separately refers to the "Completing Defendants," which appears to be a typographical error in the complaint, and the Court interprets the two terms as the same.

and the same, (iii) conclusorily asserting that Taylor and Price "joined" one or more of those persons and/or entities and that, thus, all of the persons and entities are liable as "Competing Employers" based on purported knowledge of the contracts at issue, and (iv) ultimately asserting that the wrongful conduct at issue has been by an unspecified one or more of the collective "Competing Employers." (ECF No. 3, ¶¶ 56–58, 171–79).

73.    Evergreen's allegations of alter ego status are entirely conclusory, and, as the Integrity Defendants note, Evergreen has failed to plead facts as to any one or more reasonably identified defendants with respect to its tortious interference claim. (*See* ECF No. 48 at 6, 19–22).[9]

74.    Without factual allegations identifying the particular Defendant(s) against whom the conduct at issue is pleaded, the complaint fails to "give[] sufficient notice of the events or transactions which produced the claim to enable the [Integrity Defendants] to understand the nature of it and the basis for it" and otherwise fails to adequately plead the requisite elements of such a claim. *Sutton v. Duke*, 277 N.C. 94, 104 (1970); *see Anderson v. Coastal Cmtys. at Ocean Ridge Plantation, Inc.*, 2012 NCBC LEXIS 35, at *58–59 (N.C. Super. Ct. May 30, 2012) (dismissing cause of action where plaintiff's use of defined terms and failure to plead facts against specific defendants were such that it was "not possible on the face of the Complaint to determine which Coastal Defendants might be subjected to liability under this

[9] Evergreen largely does not dispute its pleading deficiencies in this respect, arguing that it used good-faith efforts to determine which Defendants it should sue and contending, in effect, that it is entitled to pursue discovery to determine if the allegations have merit. (ECF No. 70 at 11–12). Such a fishing expedition would be improper.

Claim"); *see also Salon Blu, Inc.*, 2018 NCBC LEXIS 72, at *12 ("[W]hen alleging a claim for tortious interference with contract, it is not enough to broadly allege that the defendant[] had 'knowledge of the contract[]'; rather, a complaint must contain 'facts sufficient to make a good claim' that the defendant[] knew of the contract[] at issue." (quoting *Krawiec v. Manly*, 370 N.C. 602, 606–07 (2018)).

75.     Thus, the Court **GRANTS** the Integrity Defendants' motion to dismiss the tortious interference cause of action and **DISMISSES without prejudice** this cause of action against the Integrity Defendants.[10]

d.  **N.C. Gen. Stat. § 75-1.1 *et seq.***

76.     For its cause of action for unfair or deceptive trade practices under Chapter 75 of the North Carolina General Statutes ("**UDTP**"), Evergreen primarily asserts that Price and Taylor have used Evergreen's purportedly confidential business information to compete with Evergreen in "breach of Evergreen's non-compete, non-disclosure, and confidentiality agreements[.]" (ECF No. 3, ¶ 196). Though it does *not* assert a cause of action for misappropriation of trade secrets, Evergreen nonetheless argues in briefing that the UDTP cause of action against all Defendants is also premised upon the contention that they "have misappropriated and continue to misappropriate the Plaintiff's business assets, including the

---

[10] "The decision to dismiss an action with or without prejudice is in the discretion of the trial court . . . ." *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013) (citation omitted). With respect to each of the causes of action addressed by this Order, the Court has carefully considered whether dismissal with or without prejudice is appropriate. In the exercise of its discretion, the Court has determined that certain causes of action should be dismissed without prejudice as indicated. Unless otherwise indicated, the remaining causes of action at issue in the motions are dismissed with prejudice.

Plaintiff's trade secrets." (ECF No. 70 at 9). All Defendants move to dismiss the cause of action.

77.     To state a claim for relief under Chapter 75 of the North Carolina General Statutes for alleged unfair or deceptive conduct, "a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *McKinnon v. CV Indus., Inc.*, 213 N.C. App. 328, 340 (2011) (citations omitted).

78.     "North Carolina courts have previously concluded that when the UDTP claim rests solely upon other claims, such as a claim for tortious interference with contract, which the court determines should be dismissed, the UDTP claim must fail as well." *Charah*, 2020 NCBC LEXIS 52, at *19 (collecting cases) (citations omitted);[11] *see Combs & Assocs. Kennedy*, 147 N.C. App. 362, 374 (2001) ("[The] plaintiff's claim that defendants engaged in unfair and deceptive trade practices rests with its claims for misappropriation of trade secrets, tortious interference with contracts and civil conspiracy. Having determined that the trial court properly granted summary judgment on each of these claims, we likewise conclude that no claim for unfair and deceptive trade practices exists."); *Amerigas*, 2015 NCBC LEXIS 98, at *40 ("[T]he

[11] As *Charah* and other cases similarly note, a plaintiff may assert a standalone cause of action for UDTP violations without other underlying causes of action, but the plaintiff must adequately allege the elements of such a claim. *Charah*, 2020 NCBC LEXIS 52, at *19–20 (N.C. Super. Ct. Apr. 17, 2020) ("Although certain [causes of action], standing alone, may evoke the action, a claim for unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1 is an independent claim that stands alone as a distinct action[.]" (quoting *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 2003 NCBC LEXIS 6, at *139 (N.C. Super. Ct. May 2, 2003))); *see also Velocity Sols., Inc. v. BSG Fin., LLC*, 2016 NCBC LEXIS 19, at *7–8 (N.C. Super. Ct. Feb. 22, 2016) (dismissing breach of contract claim but denying motion to dismiss UDTP claim).

Court concludes that the dismissal of Defendants' trade secret and tortious interference claims extinguishes [the plaintiff's] UDTP claim on these grounds." (citation omitted))); *see also Bite Busters, LLC v. Burris*, 2021 NCBC LEXIS 26, at *26–28 (N.C. Sup. Ct. Mar. 25, 2021); *Prometheus*, 2023 NCBC LEXIS 42, at *11.

79.     Evergreen's lone substantive cause of action against the Integrity Defendants is for tortious interference with contract, and the conduct identified as the basis for its UDTP cause of action against those defendants is the same as the conduct upon which the tortious interference cause of action is premised. Thus, as the Court dismisses without prejudice the cause of action for tortious interference against the Integrity Defendants, the Court determines that it is appropriate to do the same for the UDTP cause of action against the Integrity Defendants.

80.     Therefore, the Court **GRANTS** the Integrity Defendants' motion to dismiss the UDTP cause of action and **DISMISSES without prejudice** this cause of action against the Integrity Defendants. *See Charah*, 2020 NCBC LEXIS 52, at *19; *S. Fastening Sys.*, 2015 NCBC LEXIS 42, at *28; *Salon Blu, Inc.*, 2018 NCBC LEXIS 72, at *19–20; *Bite Busters*, 2021 NCBC LEXIS 26, at *26–28; *Prometheus*, 2023 NCBC LEXIS 42, at *11.[12]

---

[12] Similarly, despite the argument in its briefing that the UDTP cause of action is premised upon misappropriation of trade secrets, Evergreen has not pleaded a cause of action for misappropriation of trade secrets and largely advanced that argument only in its brief in response to the Integrity Defendants' motion. (*Compare generally* ECF Nos. 3, 69 *with* ECF No. 70). Regardless, even if the UDTP cause of action were premised upon purported misappropriation of trade secrets, Evergreen has failed to adequately plead facts to state such a claim. *See, e.g.*, *Washburn v. Yadkin Valley Bank & Trust*, 190 N.C. App. 315, 327 (2008); *Stephenson v. Langdon*, 206 N.C. App. 765 (2010); *see also Unimin Corp. v. Gallo*, 2014 NCBC LEXIS 44, at *43–44 (N.C. Super. Ct. Sept. 4, 2014); *Edgewater Services., Inc. v.*

81. As to Price and Taylor, however, Evergreen has stated a claim upon which relief can be granted.

82. Though Evergreen's breach of contract action premised upon the alleged disclosure of confidential information survives the motion to dismiss, that alone would not suffice to permit the UDTP cause of action to proceed. *See Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 42 (2006) (noting that a mere breach of contract, even if intentional, is insufficient to state a UDTP claim); *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367–68 (2000) (clarifying that substantial aggravating circumstances must surround a breach of contract to permit a UDTP claim).

83. However, Evergreen also asserts a cause of action against Price and Taylor for computer trespass, which none of the parties substantively brief and which Price and Taylor have not moved to dismiss. (ECF No. 3 at 30).

84. "[C]omputer trespass in violation of state law constitutes conduct 'which a court of equity would consider unfair'" and may form the basis for a UDTP cause of action. *CRH Eastern, LLC v. Berastain*, 2025 NCBC LEXIS 11, at *41 (N.C. Super. Ct. Feb. 4, 2025) (quoting *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 400 (1978) (other citation omitted)).

85. For reasons unexplained, Plaintiff fails to make this argument in its briefing. And the Court, of course, will not make the parties' arguments for them. In resolving the motions to dismiss, however, the Court is obligated to consider whether

*Epic Logistics, Inc.*, 2009 NCBC LEXIS 21, at *9–16 (N.C. Super. Ct. Aug. 11, 2009); *see generally Akzo*, 2011 NCBC LEXIS 42.

the complaint states "some legally recognized claim" for "some legal theory" upon which relief can be granted. *Howell v. Cooper*, 388 N.C. 71, 78 (2025) (citations omitted). This is not a high bar.

86. Despite Plaintiff's own inadequate briefing and articulation of the issues, construing the non-conclusory factual allegations of the complaint as true and considering the computer trespass claim that is unchallenged at this stage by Price and Taylor, along with the confluence of other alleged facts in the complaint, the Court cannot conclude at this stage "beyond a doubt that the plaintiff could *not* prove any set of facts to support [its] claim which would entitle [it] to relief" on its UDTP cause of action. *Gress v. Rowboat Co.*, 190 N.C. App. 773, 776 (2008) (citations omitted) (emphasis added).

87. Thus, the Court **DENIES** Price's and Taylor's motion to dismiss the UDTP cause of action.

### e. Injunctive Relief, Constructive Trust, and Punitive Damages

88. Inasmuch as Evergreen purports to assert "claims" for injunctive relief, punitive damages, and imposition of a constructive trust, such "claims" inherently fail as a matter of law because, as this Court and others have repeatedly recognized, they are not independent causes of action or claims. *Collier v. Bryant*, 216 N.C. App. 419, 434 (2011) ("Punitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action." (citation omitted)); *Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005) ("A preliminary injunction is an ancillary remedy, not an independent cause of action."); *W&W Partners, Inc. v. Ferrell Land*

*Co., LLC*, 2019 NCBC LEXIS 45, at \*26 (N.C. Super. Ct. July 25, 2019) ("[A] constructive trust is not a standalone claim for relief or cause of action." (citation omitted)); *Brewster v. Powell Bail Bonding, Inc.*, 2018 NCBC LEXIS 76, at \*18 (N.C. Super. Ct. July 26, 2018) ("[I]njunctions are remedies, not independent causes of action." (citation omitted)).

89.    Accordingly, Defendants' motions to dismiss as to the purported causes of action for injunctive relief, constructive trust, and punitive damages are **GRANTED**, and these causes of action are **DISMISSED without prejudice** to Evergreen's ability to renew its request for such remedies at a later stage of this action if appropriate.[13]

### III. CONCLUSION

90.    Therefore, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss as set forth above.

**SO ORDERED**, this 29th day of December 2025.

/s/ Matthew T. Houston

Matthew T. Houston
Special Superior Court Judge
 for Complex Business Cases

---

[13] The Court notes that it has already denied Evergreen's request for a preliminary injunction, and this Order and Opinion in no way modifies or changes the Court's Order denying the motion for a preliminary injunction. (ECF No. 43).